Stephen KEHOSKIE, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–35.

United States Court of Veterans Appeals.

Submitted May 8, 1991.

Decided Dec. 17, 1991.

Edward J. Kowalczyk (non-attorney practitioner) was on the brief, for appellant.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Carolyn F. Washington, Washington, D.C., were on the brief, for appellee.

Before MANKIN, IVERS and STEINBERG, Associate Judges.

IVERS, Associate Judge:

Appellant, Stephen Kehoskie, appeals from a September 28, 1989, Board of Veterans' Appeals (BVA or Board) decision which upheld the denial of service connection for chronic calluses on his feet. Appellant has attempted to reopen his claim which was previously denied by a July 31, 1987, BVA decision. The Board found that the evidence submitted by appellant to reopen his claim was duplicative. Under 38 C.F.R. § 3.156(a) (1991) evidence is not material if it is cumulative or redundant. *See also Colvin v. Derwinski*, 1 Vet.App. No. 171, 174 (1991). Following this Court's analysis in *Manio v. Derwinski*, 1 Vet.App. 140, 145–46 (1991), appellant's claim should not have been reopened because no new and material evidence was presented. However, instead of dismissing the claim and regardless of its finding that the evidence presented was only cumulative, the Board appeared to reopen the claim. A reopening was inappropriate here and, had an error been alleged in the Board's ensuing review process, such error would be considered harmless. *See* 38 U.S.C. § 7261(b) (formerly § 4061(b)); *Thompson v. Derwinski*, 1 Vet.App. 251, 253–54 (1991). The BVA decision is affirmed.

## I. BACKGROUND

Appellant was on active duty in the United States Army from December 8, 1942, to November 2, 1945. Appellant contends that a vast majority of his service medical records were destroyed in a fire at the National Personnel Records Center on July 12, 1973. R. at 42. However, some of appellant's service medical records still exist, including a notation on a medical report that stated that appellant had calluses removed from both feet on December 26, 1942. R. at 3. Although appellant's discharge examination noted a shrapnel wound appellant received in his left thigh in January, 1945, which was later determined to be service-connected, appellant's feet were noted as normal. R. at 4. Appellant eventually received a thirty-percent rating for the thigh injury. R. at 6. The record also contains an appeal to increase this rating in 1965. R. at 7. That appeal, however, did not involve service connection for foot calluses. Appellant was later denied service connection for calluses in subsequent Regional Office (RO) rating decisions. R. at 14, 17, 21.

The first evidence of record regarding appellant's calluses after service is found in a medical report dated July 16, 1981. Later, in a medical certificate, dated August 18, 1981, appellant was diagnosed with "callusitis" [sic] of his left foot. R. at 20. Appellant received treatment for this disorder on October 15, 1981, November 19, 1981, January 7, 1982, January 15, 1982, and April 3, 1982. R. at 19, 23. During the same period, appellant was seeking service connection for a back disorder. Appellant's claim for service connection for calluses originated from a May 3, 1983, BVA decision remanding appellant's back claim back to the Veterans' Administration (now Department of Veterans Affairs) (VA) RO to review that claim in light of any additional service military records which may have been received on February 15, 1983. R. at 24. The search uncovered the medical records already discussed above. A rating decision, dated June 2, 1983, described appellant's foot disorder as fibrous keratoma and denied service connection for it. *Id.* That rating decision stated that:

> The one-time episode of removal of calluses on both feet in December 1942 was evidently accomplished some three weeks after entry into military service. It cannot be reasonably assumed that the claimed condition was service incurred or aggravated on [the] basis of available evidence.

*Id.*

Appellant then submitted a letter from Dr. Willard J. Blauvelt, dated June 15, 1983. Dr. Blauvelt stated that he had

treated appellant shortly after the end of World War II for callosities on the plantar surfaces of both feet. However, Dr. Blauvelt also stated that appellant had not been under his care since that time. R. at 27. Appellant also submitted a letter from Dr. Robert E. Sorensen who stated that appellant first saw him in October, 1981, and noted that appellant had a corn that had been present for many years. R. at 28. On March 7, 1984, the BVA denied service connection for appellant's bilateral foot disorder on the grounds that "the episode of callosities on both feet in service were [sic] of an acute and transitory nature, and, with removal, the problem was resolved." R. at 34.

Appellant then attempted to reopen his claim in July 1984 with a medical report indicating chronic calluses, along with several medical reports showing treatment. R. at 37, 39, 40. The claim was again denied by the RO on September 11, 1984. R. at 38. Appellant filed a Notice of Disagreement on March 11, 1985. The BVA remanded the claim so that a special orthopedic evaluation could be performed. *Id.* at 2. Dr. George M. Raus, the examining physician found that appellant "[had] bilateral, severe cavus feet with high long arches" and "depressed metatarsal heads." R. at 51. Although he could not relate appellant's calluses to the left thigh wound, he did suggest that they may have been caused by appellant's service activities. *Id.* at 51–52. Despite this opinion by a VA physician, the subsequent rating decision, dated June 5, 1986, addressed only the issue of service connection for the left thigh. R. at 56.

Appellant then submitted another letter from Dr. Sorensen which stated that appellant's foot condition "is a sequela of the shrapnel of the posterior aspect of the left thigh which damaged the hamstring muscles." R. at 57. However, the rating board concluded that the VA examination and the recently submitted medical report warranted no change in the prior decision. Service connection for calluses of the feet remained denied. R. at 59–60.

Appellant attempted to reopen his claim three more times on essentially the same evidence which was already of record. The subsequent adjudications eventually resulted in the filing of a Notice of Disagreement on December 9, 1988; the sole issue was service connection for calluses. R. at 87. The BVA noted that since the 1987 BVA adjudication, appellant had submitted only previously submitted evidence, a statement from the National Personnel Records Center which noted that if his records were at that facility, they would have been destroyed in the fire in 1973, and a list of physicians who rendered treatment in 1960 and in the 1980's. *Stephen Kehoskie,* BVA 89–064–0913, at 3 (Sept. 28, 1989). The Board denied appellant's claim. Appellant made a timely appeal to this Court. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a) (formerly § 4052(a)).

## II. ANALYSIS

 The Court must determine whether appellant's claim was properly reopened by the BVA. Under *Manio*, at 145, the Board must first determine if the evidence submitted is both new and material. If it is, then the Board must reopen the claim and evaluate the merits of veteran's claim in light of all the evidence, both old and new. *See* 38 U.S.C. § 7104(b) (formerly § 4004(b)). Here, in the Discussion and Evaluation section of the Board's decision, the Board stated:

Evidence received in support of the veteran's reopened claim, including his statements reiterating his earlier contentions, does not support a grant of service connection. The list of doctors from whom the veteran has received treatment is not clinical evidence and, in addition, does not indicate that he was treated directly after service. The service medical records consist of previously considered evidence and are, therefore, duplicative. The indication that some of the veteran's service medical records may have been destroyed in a fire at the National Personnel Records Center does not change the basic fact that the veteran left service without a foot disability and further that there is no clinical docu-

mentation of a foot disorder until many years after the veteran's period of active service.

*Kehoskie*, BVA 89–064–0913, at 4–5. After determining that the evidence was duplicative and, thus, cumulative and not new and material, the Board should have stopped its analysis of the claim. Instead the Board went further, stating:

> Therefore, the Board concludes that the evidence received in support of the veteran's reopened claim, when considered in **conjunction** with the remainder of the record, does not establish any facts different from those previously found. Accordingly, the veteran's claim must remain denied.

*Kehoskie*, BVA 89–064–0913, at 5 (emphasis added). This language suggests that despite finding the evidence not new and material, the Board decided to reopen appellant's claim anyway. This is further evidenced by the Board's Conclusion of Law which stated "[t]he July 1987 decision of the [BVA], which denied service connection for chronic calluses on the feet, was a final determination, and a new factual basis has not been presented to demonstrate that chronic calluses on the feet were incurred in or aggravated by the veteran's active service." *Id.*

As stated in *Thompson*, at 253, a claim can be reopened and reconsidered on the merits only upon the submission of new and material evidence. Otherwise, a BVA decision is final. The one exception to this rule of finality is when there has been an administrative error committed by the VA during the adjudication of the claim. *See* 38 U.S.C. § 503(a) (formerly § 210(c)(2)). There was no administrative error alleged to have occurred in this claim. Since no new and material evidence was submitted, this claim should not have been reopened. If it was, which is not entirely certain, even though the language of the Board's decision suggests that the claim was reopened, the reopening inured to the benefit of appellant. However, in the Board's ensuing review process, reopening the claim was inappropriate and, had an error been alleged, such error would be considered

harmless. *See* 38 U.S.C. § 7261(b); *Thompson*, at 253–54.

The Court reiterates that, on a request to reopen a claim, once the Board makes a determination that newly submitted evidence is not new and material, the Board's analysis of a claim should cease. Further analysis under these circumstances is not only confusing to the appellant but also to this Court on review. Therefore, for the reasons set forth above, the Board's decision is AFFIRMED.