Frank R. BROOKS, Appellant,

v.

Anthony J. PRINCIPI, Acting Secretary of Veterans Affairs, Appellee.

No. 91–1837.

United States Court of Veterans Appeals.

Oct. 29, 1992.

Before KRAMER, Associate Judge.

MEMORANDUM DECISION

KRAMER, Associate Judge:

Appellant, Frank R. Brooks, appeals a July 15, 1991, decision of the Board of Veterans' Appeals (BVA) denying him reimbursement for certain medical expenses incurred during two hospitalizations at George Washington University Medical Center (GWUMC), November 21–23, 1988 (hospitalization 1), and May 12–15, 1989 (hospitalization 2). The Secretary of Veterans Affairs (Secretary) has filed a motion for summary affirmance. The Court grants the Secretary's motion, and affirms the BVA decision. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a) (formerly § 4052(a)).

The relevant evidence of record is summarized as follows. Appellant has been rated 100% disabled for service-connected schizophrenic reaction since December 1980. The principal diagnosis during hospitalization 1 was cocaine abuse. S.R. at 1. Appellant readmitted himself for hospitalization 2, during which the principal diagnoses were cocaine intoxication, drug and alcohol abuse, and probable schizophreniform disorder. S.R. at 24. The discharge summary regarding hospitalization 2 states that on "the evening of admission he presented to the Emergency Room complaining of increased paranoid feelings and assaultive ideas.... [H]e turned over a strike knife which he said he had secondary to fears that other[s] were after him." *Id.* During hospitalization 2, appellant indicated that he wanted long-term treatment at a Department of Veteran Affairs (VA) Medical Center (MC) (probably, but not indicated, in Washington, D.C.), but that no beds were available. *Id.* While hospitalized, appellant made calls to a VA psychiatrist. S.R. at 27. This psychiatrist indicated to staff that he would see appellant the day

after discharge. *Id.* The discharge summary states that appellant discharged himself from both hospitalizations 1 and 2 against medical advice, but was not at acute risk of harm to himself or others. S.R. at 24, 27.

In a letter to the VAMC, dated June 14, 1989, appellant's mother stated that her son had been turned away twice on the basis of no available beds, once when her son had attempted to admit himself and once when she had attempted to admit him. S.R. at 33. She wanted to know why certain hospitalizations including, but not limited to, hospitalizations 1 and 2 were not reimbursable. *Id.* She also indicated, however, that her son had been hospitalized at the VAMC from May 23, 1989, to June 18, 1989 (although her letter is dated June 14, 1989). *Id.* A "Report of Contact," VA Form 119, dated July 12, 1989, indicated that no claims for reimbursement had previously been submitted, and that when appellant's mother had brought private medical bills to the VAMC on July 12, 1989, she was advised of what additional information was needed to process the claim. S.R. at 34.

The VA progress notes, not dated, but following an entry dated October 30, 1989, and signed by a physician, note that hospitalizations 1 and 2 were for drug abuse, that hospitalization 2 was probably intended to short circuit the waiting list for a VA (apparently residential) drug abuse treatment program, that appellant and his mother were familiar with VA admission regulations, and that reimbursement was not recommended. S.R. at 40. A letter from the VAMC, Washington, D.C., dated December 15, 1989, to GWUMC, stated that professional staff had reviewed appellant's record and determined that medical services rendered to appellant by GWUMC were not emergent and that the VAMC, Washington, D.C., was feasibly available to appellant; because of this, the VAMC would not pay for hospitalizations 1 and 2. S.R. at 42. A letter dated April 2, 1990, from the VAMC to a veterans service organization, indicated that "at no time was [appellant] denied medically indicated admissions to this medical center." S.R. at 44.

At a hearing before the BVA on June 10, 1991, appellant's mother testified that: over the last thirteen years, her son had been refused admission to the VAMC on a number of occasions on the basis that no beds were available (R. at 4–5, 9); that at times, she had requested appellant's social worker to document unavailability; that she had called the VAMC, at an unspecified time, regarding hospitalizations 1 and 2, to have the VAMC document unavailability (R. at 3–5); that prior to hospitalizations 1 and 2, appellant had told her he was going to the Washington Hospital Center (R. at 9); and that GWUMC is farther from appellant's home than the VAMC (R. at 8).

In relevant part, the BVA stated in its decision that

> permanency of the total rating for this service-connected condition has not been established.... [T]he evidence does not establish that the veteran's condition was of such nature and severity at the time of his admissions to the private hospital so as to preclude treatment in a VA facility.... Although it has been contended that the veteran attempted to obtain treatment at the VA medical center and was informed that no beds were available, the VA medical center has indicated that its records do not reflect any request for admission by the veteran at the time of his admissions to the private hospital and that VA medical facilities were available for his treatment on those occasions.

*Frank R. Brooks*, BVA 91–___, at 3 (July 15, 1991).

Title 38, Code of Federal Regulations, section 17.80 (1991), promulgated under the statutory authority of 38 U.S.C. § 1728 (formerly § 628), and 38 C.F.R. §§ 17.50c and 17.50d (1991), promulgated under the Secretary's general rulemaking power, and 38 U.S.C. § 501 (formerly § 210), govern the disposition of this case.

These regulations, in relevant part, provide:

> § 17.80. To the extent allowable, payment or reimbursement of the expenses of care, not previously authorized, in a

private hospital not operated by the Department of Veterans Affairs ... may be paid on the basis of a claim timely filed, under the following circumstances:

(a) *For veterans with service connected disabilities.* Care or services not previously authorized were rendered to a veteran in need of such care or services:

(1) For an adjudicated service-connected disability;

(2) For nonservice-connected disabilities associated with and held to be aggravating an adjudicated service-connected disability;

(3) For *any disability* of a veteran who has a total disability permanent in nature resulting from a service-connected disability ...;

....

(b) *In a medical emergency.* Care and services not previously authorized were rendered in a medical emergency of such nature that delay would have been hazardous to life or health, and

(c) *When Federal facilities are unavailable.* VA or other Federal facilities were not feasibly available, and an attempt to use them beforehand or obtain prior VA authorization for the services required would not have been reasonable, sound, wise, or practicable, or treatment had been or would have been refused.

§ 17.50c. The admission of any patient to a private ... hospital at Department of Veterans Affairs expense will only be authorized if a Department of Veterans Affairs medical center or other Federal facility to which the patient would otherwise be eligible for admission is not feasibly available. A Department of Veterans Affairs facility may be considered as not feasibly available when the urgency of the applicant's medical condition ..., or the nature of the treatment required makes it necessary or ... advisable to use ... private facilities.

§ 17.50d. (a) The admission of a veteran to a non-Department of Veterans Affairs hospital at Department of Veterans Affairs expense must be authorized in advance. In the case of an emergency which existed at the time of admission, an authorization may be deemed a prior authorization if an application, whether formal or informal, by telephone, telegraph or other communication, made by the veteran or by others in his or her behalf is dispatched to the Department of Veterans Affairs ..., within 72 hours after the hour of admission....

(b) When an application for admission by a veteran ... has been made more than 72 hours after admission, ... authorization for continued care at Department of Veterans Affairs expense shall be effective as of the postmark or dispatch date of the application, or the date of any telephone call constituting an informal application.

■ The Court notes the following deficiencies in the BVA decision: the failure to apply and analyze, based on the evidence of record, the prongs and subprongs of the eligibility test provided in 38 C.F.R. § 17.80. Particularly notable were the failure to analyze the applicability of § 17.80(a)(1) and to give reasons or bases for its finding that appellant did not have a permanent disability under § 17.80(a)(3); and the failure to analyze, let alone refer to, 38 C.F.R. § 17.50d, in light of appellant's telephone call to the VA psychiatrist during hospitalization 2, and the testimony of appellant's mother.

■ Nevertheless, 38 C.F.R. §§ 17.80, 17.50c, and 17.50d, on their face, require an emergency, urgency of care, or unique treatment. The evidence from hospitalization 1 includes a diagnosis of cocaine abuse and discharge against medical advice but without unique risk of harm to appellant or to others. A later letter from the VAMC indicated that the medical services rendered were not emergent.

The evidence from hospitalization 2 includes diagnoses of cocaine intoxication, drug and alcohol abuse, and probable schizophreniform disorder; a statement by appellant regarding paranoid feelings and assaultive ideas, and surrender of a knife which appellant suggested he had for self-protection; and a statement that appellant discharged himself against medical advice

but without risk of acute harm to himself or to others. Later VA progress notes and the VAMC letter conclude, respectively, that hospitalization 2 was probably intended to short-circuit the VA waiting list, and that the medical services received were not emergent.

Although the BVA decision does not specifically discuss the emergent, urgent, or unique treatment prerequisites for reimbursement, it does state that the nature and severity of the veteran's condition precluded reimbursement. Based on the evidence of record, the implicit determination that hospitalizations 1 and 2 were not emergent, urgent, or unique cannot be deemed implausible and are therefore not clearly erroneous. 38 U.S.C. § 7261(a)(4) (formerly § 4061(a)(4)); *See Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). Because a determination of emergency, urgency, or uniqueness is a prerequisite for reimbursement, the deficiencies in the BVA decision referenced above are harmless error. 38 U.S.C. § 7261(b) (formerly § 4061(b)); *See Godwin v. Derwinski,* 1 Vet.App. 419, 427 (1991); *Kehoskie v. Derwinski,* 2 Vet.App. 31, 34 (1991).

Upon careful consideration of the record and the filings of the parties, the Court grants the Secretary's motion for summary affirmance, and affirms the BVA decision. Summary disposition is appropriate when, as here, the issue is of relative simplicity and the outcome is not reasonably debatable. *See Frankel v. Derwinski,* 1 Vet.App. 23 (1990).

The Secretary's motion is GRANTED, and the decision of the BVA is AFFIRMED.