**Jearldean B. McGINNIS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–1292.**

United States Court of Veterans Appeals.

Feb. 24, 1993.

Jearldean B. McGinnis, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Michael P. Butler were on the pleadings, for appellee.

Before FARLEY, HOLDAWAY and STEINBERG, Associate Judges.

STEINBERG, Associate Judge, filed an opinion concurring in part and dissenting in part.

FARLEY, Associate Judge:

Appellant, the widow of veteran William B. McGinnis, appeals from an April 4, 1991, decision of the Board of Veterans' Appeals (Board or BVA) which denied service connection for the cause of her husband's death. A timely appeal to this Court followed. On February 10, 1992, appellant filed an informal brief. On May 8, 1992, the Secretary of Veterans Affairs (Secretary) filed a motion for summary affirmance, for acceptance of the motion in lieu of a brief, and for a stay of proceedings. Appellant did not file a response to the Secretary's motion.

### I.

Appellant's husband, William B. McGinnis, served on active duty from April 1944 to November 1947 and from February 1951 to July 1968. R. at 1–2. The veteran died on October 21, 1986, at the age of 60. R. at 60, 123. His death certificate lists cardiac arrhythmia as the immediate cause of death. R. at 123. Under the heading "DUE TO, OR AS A CONSEQUENCE OF (Condition(s) which gave rise to [immediate cause]—List underlying cause last)," pneumonia with obstruction and bronchogenic carcinoma-metastatic are listed. *Id.* In addition, coronary heart disease, and diabetes are listed as "OTHER SIGNIFICANT CONDITIONS—Conditions contributing to death but not related to [immediate cause]." *Id.* At the time of his death, Mr. McGinnis was service-connected for bilateral varicose veins, rated as 30% disabling; diabetes mellitus, rated at 10% disabling; and post-operative removal of a benign tumor from the left shoulder, rated at 0% disabling. R. at 144.

In November 1986, appellant filed with the Veterans' Administration (now Department of Veterans Affairs) (VA) a VA Form 21–534 (APPLICATION FOR DEPENDENCY AND INDEMNITY COMPENSATION (DIC)). R. at 114. In rating decisions dated November 24, 1986 (R. at 125), and February 4, 1987 (R. at 132), the VA Regional Office (RO) denied appellant's DIC claim; the RO rating boards determined that the veteran's death was not due to disabilities incurred in or aggravated by service, and that the veteran's service-connected disabilities did not substantially or materially contribute to the cause of his death.

On July 14, 1989, appellant filed a VA Form 21–4138 (STATEMENT IN SUPPORT OF CLAIM) requesting that the VA reopen her DIC claim; she contended that her husband's service-connected diabetes contributed to his death and that, as a result, his cause of death was service-connected. R. at 133. In support of her request to reopen the DIC claim, appellant submitted her husband's final hospitalization records, including a "history and physical examination" report and "expiration summary" prepared by the veteran's treating physician, Dr. Bruce L. Bigman. R. at 136–40. Both the report and the summary list the veteran's admitting diagnosis as: probable acute pneumonia with high fever and shaking chills, exacerbation of chronic obstructive pulmonary disease, poorly differentiated squamous cell carcinoma of the right upper lobe, arteriosclerotic heart disease, and insulin dependent diabetes mellitus. R. at 136, 138. The history and physical examination report also notes that the veteran had been treated by Dr. Bigman "for sometime due to his metastatic bronchogenic carcinoma as well as his diabetes and severe atherosclerotic heart disease." R. at 136. The report also indicates that the veteran was suffering from "known inoperable cancer." *Id.* In a subsequent rating decision dated September 22, 1989, the RO denied service connection for the veteran's death based on new and material evidence. R. at 141.

On October 31, 1989, appellant filed a Notice of Disagreement with the September 1989 rating, R. at 142, and a Statement of the Case (SOC) was issued to appellant on November 8, 1989. R. at 143–45. As the "REASONS FOR DECISION," the SOC noted:

There is no new and material evidence to establish that conditions causing death were incurred or aggravated while the veteran was on active duty or that these conditions became manifest to a degree

of at least 10 percent within one year of his release from active duty. Likewise, there is no evidence that service connected disabilities materially contributed to his demise. All evidence seems clear that the cause of death was progressive metastatic carcinoma.

R. at 145.

Thereafter, appellant submitted a letter from Dr. Bigman, dated December 12, 1989, which opines that the veteran's service-connected diabetes was a contributing cause of his death. R. at 147. Dr. Bigman's letter states, in relevant part:

> Mr. McGinnis was a long-standing insulin dependant diabetic. He suffered severe triple vessel coronary disease for years and underwent two separate coronary bypass surgical procedures. He later developed bronchogenic carcinoma two years before his death which was "the last straw."
>
> It is certainly felt that his premature insulin dependant diabetes mellitus placed [sic] a prominent role in his subsequent many medical illnesses and their complications.

*Id.*

On December 21, 1989, appellant perfected an appeal to the BVA. R. at 146. In February 1990, appellant's representative testified before an RO hearing officer. R. at 151–52. Relying on Dr. Bigman's written statements, appellant's representative argued that the veteran's service-connected diabetes mellitus and non-service-connected heart disease were significant factors in the development and progression of the veteran's medical disorders and ensuing death. The representative stated, "Basically Dr. Bigman is saying that if the veteran had not had diabetes mellitus and he had not had a severe cardiac condition, which required two open heart surgeries, that he probably would not have died as hastily as he did." *Id.* Further, appellant's representative argued:

> We do know that the actual cause of death was the residuals of carcinoma. However, we feel that since the death certificate clearly shows another significant cause, which is diabetes and his heart, or diabetes and his heart condition, that reasonable doubt should be resolved in the widow's favor, and a grant of dependency and indemnity compensation be awarded.

R. at 152.

In a decision dated February 27, 1990, the hearing officer determined that the evidence of record did not warrant a finding of service connection for the veteran's cause of death. Under the heading "REASONS FOR DECISION," it was noted:

> The evidence of record shows that the veteran's death was the result of squamous cell carcinoma of the lung. The evidence including the Terminal Hospital Report showed the effects of the veteran's non-service-connected carcinoma was of such magnitude and severity as to be the sole cause of death. The evidence does not support a finding that the veteran's service-connected disability, or disabilities which may have been service-connected due to the diabetes mellitus, materially hastened or contributed to the cause of death.

R. at 154.

The resulting adverse rating decision was communicated to appellant by the Supplemental Statement of the Case dated April 23, 1990. R. at 155–57. Thereafter, appellant submitted another STATEMENT IN SUPPORT OF CLAIM dated June 19, 1990, in which she emphasized that the veteran's final hospitalization records revealed an elevated blood glucose level immediately prior to his death; appellant contended that the elevated blood sugar readings indicated that the veteran's service-connected diabetes was a contributing factor in his death. R. at 158–59. In further support of her DIC claim, appellant submitted another letter from Dr. Bigman, dated June 18, 1990, which states in relevant part:

> Mr. McGinnis was a long-standing insulin dependent diabetic and it is certainly felt that his premature insulin dependant diabetes mellitus played a prominent role in his subsequent many medical illnesses and their complications.

R. at 161.

In a rating decision dated July 27, 1990, the RO confirmed the prior rating decisions

based on the additional evidence submitted by appellant. R. at 163. Subsequently, in a decision dated April 4, 1991, the BVA denied service connection for the veteran's death, finding that "[t]he service-connected disabilities were not related etiologically or causally to the cause of death, nor did they accelerate or otherwise play a significant role in causing death." *Jearldean B. McGinnis*, BVA ___, at 6 (Apr. 4, 1991). In reaching its decision, the Board rejected the additional evidence submitted by appellant, noting as follows:

> Evidence considered in connection with the claim in July 1989 includes findings from the veteran's terminal hospitalization record. While the death certificate listed the veteran's service connected diabetes mellitus as a contributory factor in his death, there is no objective medical evidence to support a conclusion that the veteran's service-connected disabilities played any role in causing or contributing substantially or materially to cause death. The Board has considered the statements by the veteran's private physician and contentions advanced at a hearing on appeal and point[s] out that the carcinoma was so overwhelming as to have resulted in death even without the service-connected disabilities.

*Id.* at 5–6. A timely appeal to this Court followed.

## II.

Under 38 U.S.C.A. § 7104(b) (West 1991), a final decision by the BVA on a given claim "may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." The exception to this rule is 38 U.S.C.A. § 5108 (West 1991) which states that "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." *See Thompson v. Derwinski*, 1 Vet.App. 251, 252–53 (1991). New evidence is evidence which is "not ... merely cumulative of other evidence on the record." *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). In *Manio v. Derwinski*, 1 Vet.App. 140 (1991), this Court established that the BVA must perform a two-step analysis when the veteran seeks to reopen a claim based upon new evidence.

> First, the BVA must determine whether the evidence is "new and material". 38 U.S.C. § [5108]. Second, if the BVA determines that the claimant has produced new and material evidence, the case is reopened and the BVA must evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old.

*Id.* at 145 (citation omitted). Whether evidence submitted to reopen a previously disallowed claim is new and material under 38 U.S.C.A. § 5108 is a question of law which this Court reviews de novo. *Colvin*, 1 Vet. App. at 174.

The determinative issue involved in appellant's claim is whether the veteran's service-connected disability, i.e. diabetes mellitus, was a contributory cause of death such as to render the veteran's cause of death service-connected for purposes of entitlement to DIC benefits under 38 U.S.C.A. § 1310 (West 1991), which provides for the payment of DIC benefits to a veteran's survivors when the veteran dies after December 31, 1956, from a service-connected disability. However, 38 C.F.R. § 3.312(a) (1992) provides:

> The death of a veteran will be considered as having been due to a service-connected disability when the evidence establishes that such disability was either the principal or a contributory cause of death. The issue involved will be determined by exercise of sound judgment, without recourse to speculation, after a careful analysis has been made of all the facts and circumstances surrounding the death of the veteran, including particularly autopsy reports.

In defining a "contributory cause of death" for purposes of service connection, 38 C.F.R. § 3.312(c)(1) provides:

> Contributory cause of death is inherently one not related to the principal cause. In determining whether the service-connected disability contributed to the death, it must be shown that it contributed substantially or materially; that it combined

to cause death; that it aided or lent assistance to the production of death. It is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection.

Pursuant to the applicable regulations, minor service-connected disabilities, particularly ones of a static nature or not materially affecting a vital organ, generally will not be held to have contributed to death. 38 C.F.R. § 3.312(c)(2). However, a service-connected disability may be a contributory cause of death even if the immediate cause of death is of such an overwhelming nature that eventual death is certain; 38 C.F.R. § 3.312(4) notes:

> There are primary causes of death which by their very nature are so overwhelming that eventual death can be anticipated irrespective of coexisting conditions, but even in such cases, there may be a reasonable basis for holding that a service-connected condition was of such severity as to have a material influence in accelerating death. In this situation, however, it would not generally be reasonable to hold that a service-connected condition accelerated death unless such condition affected a vital organ and was of itself of a progressive or debilitating nature.

### III.

■ The additional evidence received since the February 1987 rating decision consists of (1) the veteran's final hospitalization records; (2) two letters from the veteran's treating physician; and (3) the testimony of appellant's representative before the St. Petersburg RO in February 1990. The veteran's final hospitalization records, while new, are not as a matter of law material to the determinative issue of whether the veteran's cause of death was service-connected; while the hospitalization records reveal that the veteran's blood glucose level was elevated prior to his death, this evidence does not prove that the veteran's service-connected diabetes mellitus played any role in either causing or contributing substantially or materially to his death by cardiac arrhythmia as the result

of pneumonia with obstruction and bronchogenic carcinoma.

The two letters from the veteran's private physician for ten years, Dr. Bigman, dated December 12, 1989, and June 18, 1990, respectively, are both cumulative of an earlier letter by Dr. Bigman, dated January 13, 1990, in which he stated: "Mr. William B. McGinnis died from bronchopneumonia and metastatic carcinoma of the lung. Atherosclerotic heart disease and poorly controlled diabetes mellitus were also contributing causes to his demise." R. at 131. In fact, Dr. Bigman's January 1987 letter is more authoritative than his latter ones because it directly relates the veteran's service-connected diabetes to his ultimate death; in the January 1987 letter, Dr. Bigman specifically asserted that the veteran's heart disease and diabetes were "contributing causes to his demise," while in the latter two letters Dr. Bigman merely opines that the veteran's service-connected diabetes played "a prominent role in his subsequent many medical illnesses and their complications." R. at 147, 161. The January 1987 letter was considered and rejected by the Board in its February 1987 rating decision; therefore, the latter two letters, which were at once vaguer and less forceful, are not "new" within the meaning of *Manio*. Further, while the hearing testimony of appellant's representative may be new, it is not material since it does not pertain to the issue of service connection for the veteran's cause of death. *See Colvin*, 1 Vet.App. at 174 (definition of material evidence).

### IV.

The RO, in its rating decision of September 22, 1989, denied appellant's request to reopen her claim on the ground that new and material evidence had not been submitted since the February 1987 final denial. R. at 141. A subsequent rating decision confirmed the prior denial, but, like the March 16, 1990, hearing officer's decision upon which it was based (R. at 153–54), it did so on the merits of the claim without addressing whether new and material evidence had been submitted. R. at 155–57.

Similarly, on appeal the BVA did not discuss whether appellant had submitted new and material evidence to warrant reopening under 38 U.S.C. § 5108; instead, the Board upheld the denial of appellant's claim on the merits.

Upon consideration of the record, appellant's informal brief, and the Secretary's motion for summary affirmance, however, the Court holds that there was no basis upon which appellant's claim could or should have been reopened under 38 U.S.C.A. § 5108 because the additional evidence submitted by appellant subsequent to the 1986 and 1987 denials was not "new *and* material" (emphasis added). Therefore, in contemplation of law, appellant's claim was a finally denied claim which has not been reopened and there was no claim to adjudicate on the merits or appeal to the BVA. The consideration and adjudication of the merits of appellant's claim was "in excess of statutory jurisdiction, authority, [and] limitations" and must be held "unlawful and set aside." 38 U.S.C.A. § 7261(a)(3)(C) (West 1991).

When faced with similar circumstances in the past, the Court in numerous panel and single-judge decisions has used the "harmless error" rubric to characterize the VA's adjudication of the merits of the claim and has affirmed the BVA decision denying the merits of the claim. *See, e.g., Thompson*, 1 Vet.App. 251; *Godwin v. Derwinski*, 1 Vet.App. 419 (1991); *Kehoskie v. Derwinski*, 2 Vet.App. 31 (1991). Presumably, the theory was "no harm, no foul": since the veteran did not prevail, it mattered not whether the jurisdictional issue was ignored and the claim denied on the merits.

▪ Upon further reflection, however, it becomes apparent that our past analyses may have been incomplete; jurisdiction does indeed matter and it is not "harmless" when the VA during the claims adjudication process fails to address threshold jurisdictional issues. This is particularly true when the Secretary ignores the mandates of 38 U.S.C.A. §§ 7104(b) and 7105(c) (West 1991) which provide that finally denied claims cannot be reopened without the submission of "new and material evidence" under 38 U.S.C.A. § 5108 in the case of final BVA decisions or without compliance with regulations in the case of unappealed final RO denials. When we affirm a BVA decision which purports to deny a reopened claim on the merits after we have concluded that there was, in fact and in law, no reopened claim to deny, we give at best equivocal direction to adjudicators and members of the Board, deprive the previous denial of finality, and effectively establish a date for a new final denial which has no basis in fact or in law. We conclude that the appropriate remedy in such circumstances is not to affirm the BVA decision denying the claim on the merits but to vacate the decision and thereby reestablish the finality of the previous denial.

Let there be no mistake about it, this remedy is not the aberration our dissenting colleague imagines it to be. It completes the analysis found lacking in our earlier harmless error approach. The cases using that analysis neither set the limit on the reasoning or the appropriate remedy to be used in resolving those and similar cases, nor constituted a holding of the type deemed binding precedent under *Bethea v. Derwinski*, 2 Vet.App. 252 (1992). The remedy in this case is not "a *decision* which conflicts materially," *id.* at 254 (emphasis added), with those earlier rulings. Finally, we note that it is the holding and reasoning of a panel opinion which determine its applicability to future cases, not the characterization of such holding and reasoning by a dissenting opinion. *See, e.g., Washington v. Clemmer*, 339 F.2d 725, 728 n. 4 (D.C.Cir.1964).

Accordingly, the BVA decision of April 4, 1991, is VACATED because appellant's claim has not been reopened since it was the subject of a final denial in a February 4, 1987, rating decision.

STEINBERG, Associate Judge, concurring in part and dissenting in part:

I concur in the excellent opinion of the Court as to parts I, II, and III. I also agree that the Board of Veterans' Appeals (BVA or Board) decision to deny the appellant's claim should not be overturned and

that readjudication by the Board is not indicated.

However, I do not agree with the decision to vacate, for technical reasons, the decision of the Board. This Court has forged a clearly defined path, from which the majority has deviated, of affirming in such cases when the Board's failures in the adjudication process were "harmless." This path was first demarcated in *Thompson v. Derwinski*, 1 Vet.App. 251 (1991), where the Court (indeed, this very same panel of the Court) held that there was no "new and material evidence ... presented or secured with respect to a [previously and finally disallowed] claim" (38 U.S.C.A. § 5108 (West 1991)) and that, therefore, the claim should not have been reopened. Hence, the *Thompson* Court held that the Board's failure "to satisfy the [second step of] the two-step test established by *Manio v. Derwinski*, 1 Vet.App. 140, 144–47 (1991), ... [was] deemed not to have been prejudicial to the ultimate resolution of the claim. *See* 38 U.S.C. § 4061(b) [ (now 38 U.S.C.A. § 7261 (West 1991)) ]." *Thompson*, 1 Vet.App. at 252. The Court, therefore, affirmed the Board's denial of the claim for service connection.

Shortly thereafter, in *Godwin v. Derwinski*, 1 Vet.App. 419 (1991), the Court cited *Thompson* in holding that the Board's application of the "wrong standard in evaluating the ... evidence [under step two of *Manio, supra* ] ... is not prejudicial error ... because the claim should not have been reopened"; the Court affirmed the Board decision (except for a remand for fulfillment of the duty to assist). *Godwin*, 1 Vet.App. at 424–25. The Court then "affirmed" in *Kehoskie v. Derwinski*, 2 Vet. App. 31, 33 (1991), on the same basis. Each of the seven judges of the Court was a member of the panel on at least one of these three ground-breaking 1991 cases.

In numerous subsequent panel opinions the Court has consistently followed this precedent and "affirmed" BVA decisions on the basis of this same harmless-error analysis. *See Baritsky v. Principi*, 4 Vet. App. 41, 42 (1993); *Helige v. Principi*, 4 Vet.App. 32, 33 (1993); *Odiorne v. Princi-*

*pi*, 3 Vet.App. 456, 460 (1992); *Schleis v. Principi*, 3 Vet.App. 415, 418 (1992); *Corry v. Derwinski*, 3 Vet.App. 231, 234 (1992); *Mason v. Derwinski*, 2 Vet.App. 526, 528 (1992); *Espiritu v. Derwinski*, 2 Vet.App. 492, 495 (1992); *Wilson v. Derwinski*, 2 Vet.App. 483, 484–85 (1992); *Shapiro v. Derwinski*, 2 Vet.App. 477, 478 (1992); *Irvin v. Derwinski*, 2 Vet.App. 358 (1992); *Sanchez v. Derwinski*, 2 Vet.App. 330, 333 (1992); *Wilisch v. Derwinski*, 2 Vet.App. 191, 193 (1992); *Masors v. Derwinski*, 2 Vet.App. 181, 186 (1992). As a result, each of the seven judges of the Court has adhered to this course of action in at least five panel opinions.

I am unable to discern the deficiency in this time-tested approach of affirming a BVA denial of a claim on the ground that the Board's deviation from the correct analytical construct of the *Manio* two-step process was harmless error. As the Court stated so clearly in *Thompson*, an appellant, in order to prevail on a reopened claim, must successfully negotiate both of *Manio*'s hurdles. It matters not on which one the claimant founders in terms of the ultimate resolution of the claim. He or she loses either way. *Thompson*, 1 Vet.App. at 253. That is why it is a harmless error when the Board muddles the two-step reopening analysis or jumps to the step-two merits sub-issue without stopping first to face the step-one threshold sub-issue of whether there is new and material evidence to reopen the claim.

The majority's stated purpose for vacating the BVA decision is to "reestablish the finality of the previous denial," which was the Regional Office (RO) decision of December 4, 1987. That may be conceptually desirable, but the majority has failed to explain what difference it makes—that is, who would be prejudiced by leaving the technically flawed BVA decision standing. In deciding appeals, this Court is mandated by its enabling statute to "take due account of the rule of *prejudicial* error." 38 U.S.C.A. § 7261(b) (West 1991) (emphasis added). It is just this sort of academic exercise which the rule of nonprejudicial or "harmless" error was designed to avoid.

Moreover, applying the majority's concept in other fact situations would likely result in needless delay and waste of scarce adjudication resources. In this case, the RO decision which the Board was reviewing correctly concluded that there was no new and material evidence and did not reopen the claim. But the RO could just as readily have made the same mistake as the Board did. In such a situation, the majority's new approach would seem to require that the Court not only vacate the BVA decision but remand the matter to the BVA for it then to vacate the offending RO decision. Such a purely technical exercise would likely take many months to complete before the claimant finally receives a final denial of reopening, thereby needlessly prolonging and complicating the adjudication process while the Board and RO jump through judicially created hoops in order to achieve no discernible advantage. Again, it is precisely to avoid such pointless and burdensome remands that this Court is mandated by 38 U.S.C.A. § 7261(b) to apply "the rule of prejudicial error."

The excursion taken by the majority here creates no new rule of law. It cannot, because in *Bethea v. Derwinski*, 2 Vet. App. 252, 254 (1992), this Court established that its panel opinions constitute "binding precedent" and cannot be overturned by a subsequent panel decision; "[o]nly the en banc Court may overturn a panel decision." *Ibid.* The majority opinion here thus decides only this case on its particular facts, and no more. It does not require that the Court in any subsequent case detour from the well-settled *Thompson/Godwin/Kehoskie* harmless-error/affirmance path to pursue an approach that will serve only to confuse claimants, and probably the BVA and the Department of Veterans Affairs (VA) as well.

In sum, there is nothing broken here to fix. Rather, in the name of achieving a form of conceptual neatness, the majority would erect a jurisdictional barrier where none exists in the statute. The Court should be wary of converting statutory limitations into jurisdictional requirements where the statute "does not speak in jurisdictional terms or refer in any way to ... jurisdiction ... [or where no] legislative history ... indicate[s] ... that Congress intended ... a jurisdictional requirement." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394, 102 S.Ct. 1127, 1133, 71 L.Ed.2d 234 (1982). Here, the operative statutory provision is 38 U.S.C.A. § 7105(c) (West 1991), which neither speaks in jurisdictional terms nor in any way refers to jurisdiction; nor is there any legislative history suggesting that Congress intended that provision to establish an inflexible jurisdictional requirement that neither the Secretary of Veterans Affairs nor this Court would have discretion to waive in the interests of equity. *See Bowen v. City of New York*, 476 U.S. 467, 482–83, 106 S.Ct. 2022, 2031, 90 L.Ed.2d 462 (1986).[1] Indeed, section 7105(c) expressly authorizes the Secretary of Veterans Affairs to prescribe regulations permitting exceptions, not inconsistent with title 38 provisions, to the rule that a final decision of a VA regional office may not be reopened or allowed. That exception authority is not dissimilar to the discretionary authority given the Secretary of Health and Human Services under the Social Security Act provisions at issue in *Bowen*, and *Mathews v. Eldridge*, 424 U.S. 319, 328 n. 9, 96 S.Ct. 893, 899 n. 9, 47 L.Ed.2d 18 (1976), to permit extensions of the statutory appeals-period limitation; that discretionary authority seemed instrumental in the Court's conclusions that the limitation was not jurisdictional and was subject to judicial tolling for equitable considerations.[2] *See Bowen*, 476 U.S. at 478–80, 106 S.Ct. at 2029–30; *Mathews, supra.*

1. The Social Security Act requirement (42 U.S.C. § 405(g)) of a "final decision" before an appeal may be taken to federal district court "consists of two elements, only one of which is properly 'jurisdictional' in the sense that it cannot be waived"; the "waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted" (quoting

*Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976)).

2. The establishment of a jurisdictional requirement by judicial construction can lead to very harsh results that the Congress may never have anticipated in enacting the statutory provision in question. Illustrative of this is one of this

With good fortune, the course taken by the majority today will be relegated to the status of aberration on the judicial landscape, a curiosity to be memorialized in a law review footnote.

Court's earliest decisions, *Torres v. Derwinski,* 1 Vet.App. 15 (1990), in which it was held, with no citation of authority, that the "imperative language of the statute [38 U.S.C.A. § 7066(a) (West 1991)] demonstrates that the requirement is jurisdictional in this case as well." *Id.* at 17. At issue there was the requirement that in "order to obtain review by [this Court] of a final decision of the Board ..., a person adversely affected by that action must file a notice of appeal with the Court ... within 120 days after the date on which notice of the decision is mailed [to the claimant and any authorized representative]." The *Torres* opinion analogized this requirement to the "mandatory and jurisdictional" nature of the provisions of Rule 3 of the Federal Rules of Appellate Procedure (which the Court found inapplicable to appeals to this Court because it was "inconsistent" with section 7266(a)). The Court manufactured a hard-and-fast jurisdictional rule without any reference to the unanimous view of the Supreme Court that similar statutory provisions governing the filing of appeals of adverse agency administrative actions in an area closely analogous to veterans' benefits or containing language similar to section 7266(a) were *not* jurisdictional and were therefore subject to exceptions (tolling, estoppel, or waiver) based on equitable considerations. *See, e.g., Zipes,* 455 U.S. at 393, 102 S.Ct. at 1132 (holding that 180–day time limit in 42 U.S.C. § 2000e–5(e) for filing an unlawful-employment-practice charge with the Equal Employment Opportunities Commission was "not a jurisdictional prerequisite to suit in federal court"); *id.* at 395–97 n. 12, 102 S.Ct. at 1133–34 n. 12 (tracing Supreme Court cases distinguishing between a "jurisdictional prerequisite" and a "statute of limitations"); *id.* at 394–95 n. 11, 102 S.Ct. at 1133 n. 11 (time requirement under National Labor Relations Act for filing unfair labor practice charge "operates as statute of limitations subject to recognized equitable doctrines and not as a restriction on the jurisdiction

of the ... Board"); *Bowen,* 476 U.S. at 478, 106 S.Ct. at 2029 (in which the Court (citing *Mathews,* 424 U.S. at 328 n. 9, 96 S.Ct. at 899 n. 9, and *Weinberger v. Salfi,* 422 U.S. 749, 763–64, 95 S.Ct. 2457, 2465–66, 45 L.Ed.2d 522 (1975)) held that "the 60–day limitation [in 42 U.S.C. § 405(g) for the filing in U.S. district court for judicial review of an adverse Social Security determination] is not a jurisdictional requirement, but rather is a statute of limitations"); *Irwin v. Veterans Admin.,* 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435, 443–44 (1990) (42 U.S.C. § 2000e–16(c) 30–day time period for filing for judicial review of unlawful employment discrimination charge is not jurisdictional). Hence, the Supreme Court has held that administrative and judicial statutory filing requirements are statutes of limitations and are thus subject to equitable tolling, waiver, and estoppel, especially in the closely analogous area of Social Security disability adjudication, which was involved in *Bowen, supra, Mathews, supra,* and *Weinberger, supra.*

As to VA claimants who miss the 120–day filing deadline under 38 U.S.C.A. § 7266(a), this Court has held that "the doctrine of equitable estoppel" cannot be applied where they assert that they were unable to comply because of mental impairment (even when that very impairment is the "disability" for which they are seeking benefits in their appeal) or, presumably, because of misleading actions by the Court itself. *Dudley v. Derwinski,* 2 Vet.App. 602, 603 (1992) (en banc); *see also Butler v. Derwinski,* 960 F.2d 139, 140–41 (Fed.Cir.1992). *But see Dudley,* 2 Vet.App. at 605–06 (Kramer and Steinberg, JJ., dissenting); *Didonato v. Derwinski,* 2 Vet.App. 42, 44 (1991) (Steinberg, J., dissenting); *Elsevier v. Derwinski,* 1 Vet.App. 150, 153–55 (1991) (holding that § 7266(a) appeal period was subject to equitable tolling or equitable estoppel—later expressly overruled in *Dudley, supra* ).