Richard C. WALDEN, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–1354.

United States Court of Veterans Appeals.

March 22, 1993.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge.

The pro se appellant, veteran Richard C. Walden, appeals from an April 3, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for a psychiatric disability. *Richard C. Walden*, BVA 91–____ (Apr. 3, 1991). The Secretary of Veterans Affairs (Secretary) has filed a motion for summary affirmance. Summary disposition is appropriate here because the case is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet. App. 23, 25–26 (1990). For the reasons set forth below, the Court will grant the Secretary's motion and affirm the Board's decision.

### I. Background

The veteran served in the United States Marine Corps from June 1976 to June 1978. R. at 1. Service medical records show that in March 1977, apparently after having expressed suicidal thoughts, he was sent to a mental health clinic for a possible psychiatric evaluation. R. at 17. The examiner assessed that the veteran was suffering from a "personality or situational disorder" and stated: "I feel this patient does not need a psychiatric evaluation but needs to be seen by a psychiatrist. I'm not sure if suicidal thoughts are genuine." *Ibid.* The examiner's note indicates that he then discussed the veteran's case with a psychologist, who, according to the examiner, agreed that "this is not a psychiatric problem but a situational or personality disorder". *Ibid.*

The veteran was admitted to the Okinawa, Japan, Naval Regional Medical Center (NRMC) in April 1978 after having made a "suicide gesture". R. at 24. The diagnoses made upon admission were "Schizoid Personality" and "Adjustment Reaction of Adult Life" (not "s[c]hizoid ... psychosis" as the appellant contends in his brief, Br. at 1). *Ibid.* In May 1978, the veteran was transferred to the Portsmouth, Virginia, NRMC, where the primary diagnosis was revised to "Obsessive–Compulsive Pers[onality] Disorder"; he was also given a secondary diagnosis of "Adjustment Reaction of Adult Life, Resolved". R. at 24–25. The May 1978 report of the Portsmouth NRMC Medical Board stated that "throughout his hospitalization there was no evidence of a psychosis or disabling neurosis.... [The veteran] has shown long[-]standing evidence of an inherent, pre-existing personality disorder". The Medical Board recommended discharge from the Marine Corps by reason of unsuitability for service. *Ibid.* Such a discharge was effectuated in June 1978. R. at 1.

In January 1980, the veteran was examined at a Veterans' Administration (now Department of Veterans Affairs) (VA) medical facility after he had threatened suicide. R. at 26. The examining physician gave an impression of "Marital maladjustment, possible personality disorder" and referred him to the facility's mental hygiene clinic. *Ibid.* In February 1980, a VA regional office (RO) denied the veteran's claim for service-connected disability compensation for a nervous condition, finding that there was no evidence of a nervous condition incurred or aggravated during service "other than the [obsessive-compulsive] personality disorder which is considered a constitutional or developmental abnormality and not considered for service connection". R. at 29.

In October 1988, the veteran apparently filed another claim for service-connected disability compensation for a nervous condition. R. at 34. The RO denied that claim, and informed him that to reopen his claim he would need to furnish new and material evidence of a current disability incurred or aggravated during service or the one-year presumption period. *Ibid.* The veteran filed a notice of disagreement, asserting that he had not filed a claim in 1980 and that the claim form in question must have been signed by someone else. R. at 33. In an August 1989 decision "limited to [the] issue of timeliness of appeal regarding the February 1980 rating decision", the Board determined that the record did not support the veteran's assertion that he had not filed the 1980 claim, and the Board denied the appeal. R. at 35–36.

In February 1990, the veteran filed an application for compensation for, inter alia, chronic paranoid schizophrenia, schizophrenia on the basis of maturation into a psychosis, obsessive-compulsive personality disorder, and organic brain syndrome. R. at 37–43. He also sought a total disability rating on the basis of individual unemployability. R. at 42. The veteran submitted an August 1988 letter from Dr. R. Kenneth Wilcox, a private psychologist who had performed a psychological evaluation of the veteran. In his letter, Dr. Wilcox stated that he had conducted an interview with the veteran and had administered a Minnesota Multiphasic Personality Inventory (MMPI) test that "resulted in an interpretable profile with all validity indicators within an acceptable range." R. at 55. He noted that one MMPI clinical scale, for "paranoia", was above scale score 70 and, hence, considered to be significant: "With an elevation on a single scale of this nature, we usually find a person who behaves in a somewhat self-righteous manner. In addition to self-righteousness, we find suspiciousness, interpersonal sensitivity, and some tendencies to react negatively to criticism." R. at 55–56. Dr. Wilcox concluded his report by stating: "The balance of the examination is free from any frank psychopathology at this time." R. at 56. The veteran also submitted undated letters from his sister and mother. R. at 64, 66. Both letters stated that, upon discharge from the Marine Corps, he had been "paranoid", "severely depressed", and unable to relate to reality. *Ibid.* He also submitted a list of his private physicians and a list of hospitals where he had sought treatment from July 1978 onward. R. at 68–69. The VA attempted to obtain treatment records from those physicians and hospitals, but its inquiries yielded no evidence of treatment for a psychiatric disorder. R. at 71, 77–78.

In September 1990, the RO issued a confirmed rating decision, finding that the veteran had not submitted new and material evidence of service connection for a nervous condition. R. at 72. Later that month, the veteran filed a notice of disagreement, stating that the entity for which he sought service connection was "chronic paranoid schizophrenia", and not a "nervous condition". R. at 74. In his October 1990 VA Form 1–9 APPEAL TO THE BVA, the veteran again denied that he had filed a claim in 1980, and asserted that he had incurred schizophrenia in service. Alternately, he asserted that an alleged overdose of medication administered to him at the Okinawa NRMC in 1978 had caused an acquired personality disorder to mature into a psychosis. R. at 82, 91. In its April 3, 1991, decision, the Board found that, although the newly submitted evidence was "new and material", the evidence did not demonstrate the presence of "any psychiatric disorder other than a personality disorder, which cannot be service-connected because of its nature as a developmental disability entity of pre[-]service origin." *Walden*, BVA 91–____, at 4–5.

## II. Analysis

### A.

■■■ Pursuant to 38 U.S.C.A. § 5108 (West 1991), the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C.A. § 7104(b) (West 1991). In considering claims to reopen previously and finally disallowed claims, the Board must first determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material". *See Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). Evidence is "new" if it is not "merely cumulative" of evidence already in the record; it is "material" if it is "relevant [to] and probative of the issue at hand" and there is a "reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Colvin v. Derwinski*, 1 Vet. App. 171, 174 (1991). The determination as to whether evidence is "new and material" is a question of law which this Court reviews de novo under 38 U.S.C.A. § 7261(a)(1) (West 1991). *See Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992); *Jones (McArthur) v. Derwinski*, 1 Vet. App. 210, 213 (1991); *Colvin, supra.*

The only new evidence added since the final RO disallowance of his claim for service connection for a nervous condition is the August 1988 letter from Dr. Wilcox, the letters from the veteran's sister and mother, and the list of treating physicians and hospitals. The August 1988 letter from Dr. Wilcox evaluating the veteran's current psychological status is the only new medical evidence. Although the letter discusses the veteran's "significant" MMPI test score for paranoia, the letter does not establish an etiological relationship between a present ratable disability and service. The lay opinions of the veteran, his mother, and his sister are not competent to establish such an etiological relationship or medical diagnosis. *See Espiritu v. Derwinski,* 2 Vet.App. 492, 494 (1992) (lay witness not competent to offer evidence that requires medical knowledge). The list of health providers offers no probative evidence on either question. Finally, although the veteran was diagnosed with a personality disorder while in service, such disorders "will not be considered as disabilities under the terms of the schedule [of ratings]." 38 C.F.R. § 4.127 (1992); *see also* 38 C.F.R. § 3.303(c) (1992) ("Congenital or developmental defects, ... personality disorders and mental deficiency as such are not diseases or injuries within the meaning of applicable legislation."). Therefore, in the absence of any evidence, old or new, of a current ratable disability which could be attributed to service, the veteran has not submitted evidence which is "probative of the issue at hand". *See Rabideau v. Derwinski,* 2 Vet.App. 141, 143–44 (1992). Although appellant has argued that his present claim for a psychiatric disorder is not an attempt to reopen his prior claim for a nervous disorder and thus does not require submission of "new and material" evidence, R. at 74, the Court need not address that issue; because there is no evidence in the record connecting a current ratable disability to service, the outcome could not possibly be changed.

There is thus no new and material evidence on the basis of which the veteran's claim may be reopened. Although the Board erred in finding new and material evidence and reopening the claim, the error was harmless because the claim was nevertheless denied upon the purported reopening. *See* 38 U.S.C.A. § 7261(b) (West 1991); *Shapiro v. Derwinski,* 2 Vet.App. 477, 478 (1992); *Kehoskie v. Derwinski,* 2 Vet.App. 31, 34 (1991); *Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991); *Thompson v. Derwinski,* 1 Vet.App. 251, 254 (1991); *see also McGinnis v. Brown,* 4 Vet.App. 239 (1993) (Steinberg, J., concurring in part and dissenting in part). Any error in the course of the BVA's adjudication was also, therefore, harmless. *Ibid.* Accordingly, the Court will affirm the Board's decision.

### III. Conclusion

Upon consideration of the record, the appellant's informal brief, and the Secretary's motion, the Court holds that the appellant has not demonstrated that the BVA committed error that would warrant remand or reversal under 38 U.S.C.A. §§ 7261, 7252 (West 1991). The Court grants the Secretary's motion for summary affirmance and summarily affirms the April 3, 1991, BVA decision.

**AFFIRMED.**