**Patty L. HELIGE, Appellant,**

v.

**Anthony J. PRINCIPI, Acting Secretary of Veterans Affairs, Appellee.**

**No. 90–1487.**

United States Court of Veterans Appeals.

Decided Jan. 8, 1993.

As amended Feb. 9, 1993.

Patty L. Helige, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Deborah W. Singleton, were on the pleadings, for appellee.

Before KRAMER, FARLEY and STEINBERG, Associate Judges.

KRAMER, Associate Judge:

Appellant appeals a November 8, 1990, decision of the Board of Veterans' Appeals (BVA) which denied the reopened claim of her husband, the veteran, for entitlement to Department of Veterans Affairs (formerly Veterans' Administration) (VA) benefits. The veteran died during this appeal, and Mrs. Patty L. Helige is substituted as appellant in his stead pursuant to Rule 43(a)(2) of this Court's Rules of Practice and Procedure. Although the BVA found, on the merits, that the additional evidence did not create a new factual basis which would warrant an allowance of appellant's reopened claim, the claim should not have been reopened because no new and material evidence was submitted. We affirm.

## I. BACKGROUND

The veteran was on active duty with the Army from June 1967 to May 1969. R. at 1, 53. On October 8, 1968, at a General Court–Martial, he pleaded guilty to a charge and three specifications of desertion, and to one charge and specification each of being absent without leave, escaping from a lawful confinement, and assaulting a soldier. R. at 21–22. *See* 10 U.S.C. §§ 885, 886, 895, and 934 (1988). During preliminary proceedings, the veteran's defense counsel requested that the veteran undergo a psychiatric examination. R. at 17. The report of this examination, dated September 3, 1968, stated, in pertinent part, that "[t]his soldier is considered mentally competent and responsible to tell right from wrong and to adhere to the right, and further possesses sufficient intellectual capacity to participate in any administrative procedure.... [Private] Helige has a severe character and behavior disorder." R. at 18. The veteran was found guilty of all charges and specifications and sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for three years. R. at 22. On November 22, 1968, an action by the Department of the Army reduced his confinement to two years. *Id.* On July 14, 1969, by order of the Secretary of the Army, the veteran's dishonorable discharge was upgraded to a bad conduct discharge. R. at 41, 48.

A March 8, 1978, administrative decision of the Seattle, Washington, VA Regional Office denied the veteran's application for hospitalization on the basis that the character of his discharge precluded him from receiving VA benefits because he "failed to submit any evidence which would tend to show that he was insane at the time of the commission of an offense leading to his court-martial." R. at 48. Generally, receipt of a discharge from a sentence of a General Court–Martial bars entitlement to

VA benefits. 38 U.S.C. § 5303 (formerly § 3103); 38 C.F.R. § 3.12 (1991). However, an exception to this rule is provided for

> if it is established to the satisfaction of the Secretary [of Veterans Affairs] that, *at the time of the commission of an offense leading to a person's court-martial, discharge, or resignation, that person was insane,* such person shall not be precluded from benefits under laws administered by the Secretary....

38 U.S.C. § 5303(b) (emphasis added). The definition of insanity for the purposes of an offense leading to a court-martial or discharge is contained in 38 C.F.R. § 3.354 (1991).

On March 16, 1989, the veteran attempted to reopen his claim for VA benefits (this time for entitlement to service-connected disability compensation for a seizure disorder, headaches, hypertension, and ear problems). R. at 53–56. In essence, he contended that as a result of a seizure disorder, he sustained blackouts and violent outbursts which rendered him insane, and that, therefore, he was entitled to receive VA benefits as a result of 38 U.S.C. § 5303(b), *supra.* R. at 57–58. He submitted service medical records (R. at 73–80, 122); a letter, dated January 8, 1987, from Dr. John D. White, a private physician, which stated that the veteran had had epilepsy since age 17 (1966–1967) (R. at 59); three letters, dated March 25, April 7, and May 12, 1987, from Dr. Raymond Larson, a private physician, which stated that the veteran had a seizure disorder that was diagnosed in 1979 (R. at 60–62); medical treatment records from June 6, 1986, to February 19, 1988 (R. at 63–66, 81–88, 91–93, 100–01, 113–16, 123–25); a Department of Health and Human Services Social Security Administration (SSA) Administrative Law Judge's decision, dated March 25, 1988, which granted the veteran SSA disability benefits as a result of a seizure disorder (R. at 70–72); three letters from Dr. Lucille Fortner, a private physician, dated March 8, May 12, and May 25, 1989, which stated that the veteran had Tourette's Syndrome (a syndrome of facial and vocal tics with onset in childhood, which progresses to cause jerking movements of

parts of the body, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1635 (27th ed. 1988)), a seizure disorder, hypertension, and migraine headaches (R. at 96–97, 102–05); and a letter from Dr. Martin Salinski, a private physician, which stated that the veteran had had a seizure disorder since he was approximately 15 years old (1964–1965) (R. at 117–19).

## II. ANALYSIS

This Court, in *Colvin v. Derwinski,* 1 Vet.App. 171 (1991), defined "new and material evidence" by stating that

> [n]ew evidence is not that which is merely cumulative of other evidence on the record. Material evidence is relevant and probative of the issue at hand.... [In addition,] there must be a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome.

*Colvin,* 1 Vet.App. at 174 (citations omitted). In the instant case, all of the service medical records, except for two pages, are cumulative of identical records previously before the VA. *See* R. at 9, 11–13, 24, 26. The two new service medical record pages consisted of the results of a normal blood test, a record of treatments for headaches and dizziness on June 25, 1968, and June 28, 1968, and an examination for sternal pain on July 1968. R. 76, 78, 122. Nevertheless, this new evidence referenced above is not material because it is not relevant and probative as to the issue of whether the veteran was insane at the time of the commission of the offenses that led to his court-martial and discharge. *See* 38 U.S.C. § 5303(b); 38 C.F.R. § 3.354. Although several of the veteran's physicians maintained that his seizure disorder predated his military service, none of the medical experts have opined that he was insane at the time of the commission of the offenses that led to his court-martial.

The veteran's claim should not have been reopened because no new and material evidence was submitted regarding entitlement to VA benefits. *See Manio v. Derwinski,* 1 Vet.App. 140, 145–46 (1991). The BVA's

decision to reopen the claim is harmless error because it is not prejudicial to appellant. 38 U.S.C. § 7261(c) (formerly § 4061(c). *See Kehoskie v. Derwinski,* 2 Vet.App. 31, 34 (1991).

### III. CONCLUSION

For the foregoing reasons, the decision of the BVA is AFFIRMED.