**Moses HAYES, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 93–771.**

United States Court of Veterans Appeals.

March 10, 1995.

Moses Hayes, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Rosalind E. Masciola, Washington, DC, were on the pleadings for appellee.

Before KRAMER, FARLEY, and STEINBERG, Judges.

STEINBERG, Judge:

The pro se appellant, Moses Hayes, appeals a July 29, 1993, decision of the Board of Veterans' Appeals (BVA or Board) denying the reopening of his claim for a back disorder and vocational rehabilitation benefits that had been previously denied on the ground of lack of a qualifying service discharge. Record (R.) at 6. The appellant has filed an informal brief urging that the Board decision be vacated and the matter remanded. The Secretary has filed a motion urging summary affirmance. Summary disposition is not appropriate here because the outcome is not controlled by the Court's precedents. *See Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990). For the reasons that follow, the Court will affirm the decision of the Board.

## I. Background

The appellant served on active duty in the U.S. Army from January 1970 to December 1973. R. at 5. He received a bad-conduct discharge, pursuant to a general court-martial, for possession of heroin and failure to follow an order. R. at 13–16. In November 1981, he filed with a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) an application for VA compensation or pension for a mental condition, back condition, and foot condition, indicating that he had been treated from October 1971 to December 1972 in an Army hospital in Vietnam. R. at 19–22. A March 1982 VARO decision concluded that he was barred from receiving VA benefits because his discharge was under dishonorable conditions and no evidence of record indicated that he was insane at the time he committed the offenses which had caused his discharge. R. at 29, 31, 39. In April 1983, stating that he had received treatment for a "mental disorder" in 1970 and 1971 in Danang Field Hospital, and from 1973 to 1978 at a private hospital, the appellant submitted an application for compensation or pension for such a disorder. R. at 34–37. The RO notified him in May 1983 that it could not process his application because of his ineligibility for VA benefits. R. at 39.

In July 1983, the appellant asked the RO to reconsider his claim for "back and leg conditions" because his discharge had been upgraded to honorable. R. at 41. In September 1983, the RO requested from the National Personnel Records Center (NPRC)

a copy of any upgraded discharge. R. at 43, 45. The NPRC informed the RO in October 1983 that the appellant's "o[ther] t[han] h[onorable]" discharge had not been upgraded. R. at 45. The NPRC attached a copy of a December 1981 letter to him from the Army Board for Correction of Military Records (ABCMR) stating that his application for correction of his Army records had been denied. R. at 47. The RO notified the appellant in December 1983 that the NPRC had reported that his discharge had not been upgraded, and that his claim could not be reopened without evidence of a change in the character of his discharge. R. at 52. In January 1984, the RO denied the appellant's request for a personal hearing. R. at 57.

In August 1984, the appellant, citing treatment in Danang in May 1970 and June 1971 and at a VA medical center from 1983 to the present, filed an application for VA compensation or pension for back injury and mental disorder. R. at 59–63. He apparently attached a copy of 38 U.S.C. § 5303, referring to Presidential Proclamation 4313 of September 16, 1974. See R. at 61. The RO notified the appellant in September and October 1984 that no further action would be taken on his claim absent action by the ABCMR. R. at 65, 69.

In May 1986, stating that his discharge had been upgraded to "general" in 1977, the appellant filed a request to reopen his compensation claim for back condition, depression, pain in both legs, and "post [Vietnam] stress syndrome". R. at 72. The RO responded in May and June 1986 (R. at 77–80) that he should submit a copy of the alleged upgraded discharge. R. at 75, 82. The RO requested from the NPRC in July 1986 "any records you may have on an upgraded discharge which [the appellant] says he received in 1977", and the NPRC responded that the "disch[arge] has not been upgraded". R. at 84. In June 1987, the appellant filed a Notice of Disagreement (NOD) and requested a personal hearing. R. at 87.

The appellant testified under oath at a July 1987 personal hearing at the RO that he had been notified by Senator Hayakawa's office and the NPRC that his discharge would be upgraded pursuant to a 1977 proc-lamation by President Carter. R. at 89–90. He testified that he had been told in 1983 and 1987 by White House personnel that his discharge should have been upgraded, and that in 1987 he had hand-carried a copy of a discharge paper from the Army or the White House to the Washington, D.C., RO. R. at 91–93. The appellant's service representative asked that another request for information be made to the NPRC. R. at 105.

In November 1987, the ABCMR denied the appellant's request for reconsideration of his application for correction of his military records. R. at 108. The ABCMR stated that insufficient evidence had been submitted to offer a basis for reversal of the previous decision, and attached (see R. at 2): (1) an untitled, undated memorandum stating that the appellant had "written or phoned the President four times" and that "reconsideration of his case cannot be initiated by telephone, [but] must be in writing" (R. at 109); (2) a March 13, 1984, letter from the U.S. Army Reserve Components Personnel and Administration Center (RCPAC) stating that the ABCMR would not reconsider its decision unless new evidence was submitted (R. at 111); and (3) an "RCPAC Cover Sheet", dated April 19, 1984, which listed "upgrade of discharge" as its subject and stated that Mr. Hayes was being advised to submit his request for reconsideration directly to the ABCMR and that "response to Mr. Hayes is at TAB A", and in the lower right-hand corner, under "action taken", "approved" was checked (R. at 110).

In March 1988, the NPRC notified the RO that as of February 1988 there was no record of the appellant's discharge having been upgraded. R. at 116. The RO determined later that month that no evidence had been received to warrant a change in its March 1982 decision. R. at 118. The appellant requested reopening of his claim in July 1988, and attached an application for vocational rehabilitation, a copy of 38 U.S.C. § 5303 containing a reference to the President's directive of January 19, 1977, and a copy of his discharge certificate. R. at 124–27. In August 1988, the RO informed the appellant that the 1977 directive did not apply in his case, that the directive was not

binding on VA, and that he could become entitled to benefits only by having his discharge status changed by the ABCMR. R. at 129.

In December 1988, the appellant filed an application for VA compensation or pension for post-traumatic stress disorder (PTSD) and back, leg, and nervous conditions. R. at 134–37. He apparently submitted an Army permanent-change-of-station order with the application. *See* R. at 138. The RO denied the claim in January 1989. R. at 141. In January 1992, he filed another application for compensation or pension for PTSD. R. at 143–46. The RO notified him in May 1992 that he had not submitted new and material evidence to reopen his claim. R. at 149–50. The appellant had an informal hearing at the RO on June 5, 1992; he stated that he had documentation from five presidents and several senators about an upgrade in his discharge status. R. at 156–59. At the hearing, he submitted a letter referring to Public Law 95–126, "President[ial] Bill 1307", and 10 U.S.C. § 1553. R. at 154, 173. The RO notified him on June 9, 1992, that no new and material evidence had been submitted to reopen his claim. R. at 161–62.

On June 10, 1992, the appellant filed an NOD, stating that at his June 1992 hearing he had submitted an "unconditional pardon" from President Reagan. R. at 167. On September 1, 1992, this Court dismissed a May 21, 1992, Notice of Appeal from the appellant, on the ground that there was no evidence that he had received a final BVA decision. R. at 164. At a May 1993 BVA hearing, the appellant testified under oath that he had received presidential pardons from former Presidents Nixon, Ford, Reagan, and Carter. R. at 187–91. At the hearing, he submitted a copy of the April 19, 1984, RCPAC cover sheet (R. at 110, 196); a statement by the appellant addressed to the ABCMR (R. at 199–200); photocopies of magazine articles (R. at 201–07); a letter from the appellant referring to Public Law 95–126, "President[ial] Bill 1307", and 10 U.S.C. § 1553 (R. at 197; *see also* R. at 154); and a statement of the issues, addressed to this Court (R. at 198). R. at 187–88. In the July 29, 1993, decision here on appeal, the

BVA, citing the NPRC reports that the appellant's discharge had not been upgraded, found that the appellant had not submitted new and material evidence showing that the character of his discharge was not a bar to VA benefits. R. at 6.

## II. Analysis

### A. Applicable law

Service connection for VA disability compensation purposes will be awarded to a "veteran" who served on active duty during a period of war or during a post-December 31, 1946, peacetime period, for any disease or injury that was incurred in or aggravated by a veteran's active service or for a chronic disease that was initially manifested to a degree of 10% or more within one year from the date of separation from service, if the claimant was "discharged or released under conditions other than dishonorable". *See* 38 U.S.C. §§ 1110, 1112(a)(1), 1131, 1137; 38 C.F.R. §§ 3.303(a), 3.306, 3.307 (1994). The definition of "veteran" in 38 U.S.C. § 101(2) also includes the requirement that the "person [have been] discharged or released [from active service] under conditions other than dishonorable". The term "dishonorable" in 38 U.S.C. § 101(2) can include a bad-conduct discharge. *See Camarena v. Brown*, 6 Vet. App. 565, 567–68 (1994) (affirming BVA finding that recipient of bad-conduct discharge was not a "veteran" as defined in 38 U.S.C. § 101(2)). Benefits are not payable when a claimant was discharged by reason of the sentence of a general court-martial, unless the claimant was insane at the time of the commission of the offense that led to the court-martial, or unless the claimant receives an upgraded discharge from a board for the correction of military records. *See* 10 U.S.C. §§ 1552, 1553; 38 U.S.C. § 5303(a), (b), (e); 38 C.F.R. § 3.12(b), (c)(2), (c)(6), (e), (f), (g); *Helige v. Principi*, 4 Vet.App. 32, 34 (1993) (newly submitted evidence was not material as to whether claimant was insane at time of offenses leading to court-martial). A bar to benefits imposed by 38 C.F.R. § 3.12(c)(2) (discharge by reason of the sentence of a general court-martial) is not removed by the President's directive of January 19, 1977, initiating further action with respect to Presidential Proclamation 4313 of September 16,

1974. *See* 10 U.S.C. § 1553; 38 U.S.C. § 5303(e); 38 C.F.R. § 3.12(g)(2), (h)(1). Status as an eligible claimant must be established before a person may receive VA services or benefits. *See Rogers v. Derwinski*, 2 Vet.App. 419, 422 (1992) (citing *Aguilar v. Derwinski*, 2 Vet.App. 21 (1991)). *But cf. Aguilar*, 2 Vet.App. at 23–24 (Kramer, J., concurring).

■■■ The Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to the basis for the denial of that claim. *See* 38 U.S.C. §§ 5108, 7105(c); *Suttmann v. Brown*, 5 Vet.App. 127, 135 (1993) (applying section 5108 to claim denied by RO). On a claim to reopen a previously and finally disallowed claim, the BVA must conduct a "two-step analysis" under section 5108. *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is new and material "when viewed in the context of all the evidence, both new and old", *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991), and when "the credibility of the [new] evidence" is presumed, *Justus v. Principi*, 3 Vet.App. 510, 513 (1992). If the evidence is new and material, the Board must then review it on the merits "in the context of the other evidence of record" to determine whether the prior disposition of the claim should be altered. *Jones (McArthur) v. Derwinski*, 1 Vet.App. 210, 215 (1991). The Court has synthesized the applicable law as follows:

> "New" evidence is that which is not merely cumulative of other evidence of record. "Material" evidence is that which is relevant to and probative of the issue at hand and which, as this Court stated in *Colvin, supra* . . . [, creates] a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome.

*Cox (Billy) v. Brown*, 5 Vet.App. 95, 98 (1993). In determining whether evidence is material, relevant statutes and regulations must be examined. *See Chavarria v. Brown*, 5 Vet.App. 468, 471 (1993) (Court examined statutes and regulations to determine if new-

ly submitted evidence created a reasonable possibility that appellant did not engage in willful misconduct—which would disqualify him for benefits at issue). A Board determination as to whether evidence is "new and material" is a question of law subject to de novo review by this Court under 38 U.S.C. § 7261(a)(1). *See Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992); *Jones*, 1 Vet.App. at 213; *Colvin, supra.*

### B. Application of law to facts

The July 29, 1993, BVA decision here on appeal determined that the appellant had not submitted new and material evidence to show that the character of his discharge was not a bar to his receipt of VA benefits. The March 1982, March 1988, and January 1989 RO decisions apparently reviewed the appellant's claim on the merits as to the issue of his eligibility for benefits (*see* R. at 29, 118, 141), and in January 1992 the appellant applied to reopen his claim (R. at 143–46). The evidence he submitted after the January 1989 RO decision was as follows: (1) His statements at the June 1992 informal RO hearing; (2) his sworn testimony at the May 1993 BVA hearing; (3) his June 1992 letter referring to Public Law 95–126, "President[ial] Bill 1307", and 10 U.S.C. § 1553 (R. at 154, 173, 197); (4) a copy of the April 1984 RCPAC cover sheet (R. at 110, 196); (5) a statement by the appellant addressed to the ABCMR (R. at 199–200); (6) photocopies of magazine articles (R. at 201–07); and (7) a statement of the issues, which had apparently been prematurely addressed to this Court (R. at 198).

■■■ In order for the evidence submitted by the appellant to be new and material for the purpose of reopening his claim, it must present a reasonable likelihood of changing the outcome of the case on the merits. *See Vecina v. Brown*, 6 Vet.App. 519, 522 (1994) (applying new-and-material-evidence test to claim to reopen regarding status as "spouse"); *see also Cox, supra.* Because the appellant received a bad-conduct discharge pursuant to a general court-martial (R. at 14), he was not eligible for VA benefits generally. *See Camarena, supra;* 38 U.S.C. § 5303(a); 38 C.F.R. § 3.12(c)(2). The appellant has made no contention that he was

insane at the time the offense leading to the court-martial was committed. *See Helige, supra;* 38 U.S.C. § 5303(b); 38 C.F.R. § 3.12(b). Rather, he claims that he has received an upgraded discharge; therefore, in order for his evidence to be new and material to reopen his claim, that evidence would, as a threshold matter, have to present a reasonable possibility of a changed outcome on the appellant's discharge status.

 The appellant has submitted no such evidence. The RCPAC cover sheet was not "new", because it had been considered by the RO in its March 1988 decision. The NPRC notified the RO on three occasions, most recently in March of 1988, that the appellant's discharge had not been upgraded (R. at 45, 84, 116), and none of the evidence submitted by the appellant demonstrated that the NPRC statement was inaccurate or that his discharge status had been upgraded since March 1988, or at any time for that matter. In December 1981, the ABCMR denied his application to correct his military records, and in November 1987 it denied his request for reconsideration. The appellant submitted evidence referring to the 1977 review and upgrade programs for Vietnam-era veterans with other-than-honorable discharges; however, none of those programs authorizes the receipt of VA benefits in a case where there has been a discharge pursuant to a general court-martial. *See* 10 U.S.C. § 1553; 38 U.S.C. § 5303(e); 38 C.F.R. § 3.12(c), (g), (h).

 The only remaining question is whether the Secretary failed in any duty to advise the appellant of what was necessary to reopen his claim. In *Robinette v. Brown,* —— Vet.App. ——, ——, No. 93–985, slip op. at 12, 1994 WL 495078 (Sept. 12, 1994), *mot. for recons. granted* 1994 WL 589873 (Oct. 21, 1994), the Court held that when a claimant fails to submit a well-grounded claim, as prescribed in 38 U.S.C. § 5107(a), then 38 U.S.C. § 5103(a) creates a duty on the part of the Secretary to advise the claimant of the evidence required to complete the application. *See also Isenhart v. Derwinski,* 3 Vet. App. 177, 179–80 (1992). In the instant case, even if it is assumed for the sake of argument that a section 5103(a) duty applied to a

claim to reopen, the RO adequately fulfilled its duty to inform the appellant of what he needed to submit in order to reopen his claim. The RO correctly informed him that in order to be eligible for VA benefits he must show that he was insane at the time of the incidents that led to his court-martial (R. at 29) or that the ABCMR had upgraded his discharge (R. at 31, 52, 69, 75, 82, 118). *See* 38 U.S.C. § 5303(b); 38 C.F.R. § 3.12(b), (e). Therefore, the Court will not defer action on this case pending reconsideration of *Robinette.*

### III. Conclusion

Upon consideration of the record, the appellant's informal brief, and the Secretary's motion, the Court holds that the appellant has not demonstrated that the BVA committed error—in its findings of fact, conclusions of law, procedural processes, or articulation of reasons or bases—that would warrant remand or reversal under 38 U.S.C. §§ 7252, 5107(a), 7104(d)(1), and 7261, and the analysis in *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990). The Court denies the Secretary's motion for summary affirmance and, after panel consideration, affirms the July 29, 1993, BVA decision.

AFFIRMED.