﻿Citation Nr: 18124188
Decision Date: 08/07/18 Archive Date: 08/06/18

DOCKET NO. 13-31 110A
DATE: August 7, 2018
ORDER
The appeal as to the issue of entitlement to a right ankle disability evaluation in excess of 10 percent prior to April 9, 2013 and in excess of 20 percent thereafter is dismissed.
The request to reopen a claim of service connection for a left ankle disability, to include as secondary to a right ankle disability is granted.
Entitlement to a rating of 70 percent, but no higher, for an acquired psychiatric disability, to include major depressive disorder (MDD) is granted.
REMANDED
Entitlement to service connection for a left ankle disability, to include as secondary to a right ankle disability is remanded.
Entitlement to service connection for a right shoulder disorder, to include as secondary to a right ankle disability is remanded. 
Entitlement to service connection for a bilateral wrist disorder, to include as secondary to a right ankle disability is remanded. 
Entitlement to service connection for a low back disability, to include as secondary to a right ankle disability is remanded.
Entitlement to service connection for a bilateral hip disorder, to include as secondary to a right ankle disability is remanded. remanded.
Entitlement to service connection for a bilateral knee disorder, to include as secondary to a right ankle disability is remanded.
Entitlement to service connection for a right ankle scar. 
Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is remanded.
FINDINGS OF FACT
1. In March 2017, the Veteran’s representative withdrew his appeal as to the issue of entitlement to a right ankle disability evaluation in excess of 10 percent prior to April 9, 2013, and in excess of 20 percent thereafter. 
2. The November 1994 rating decision, which denied service connection for a left ankle disability, as secondary to a right ankle disability was not appealed following the issuance of notice of the denial to the Veteran in December 1994 and that decision is final.
3. In rating decisions of April 2004 and January 2006, the RO continued and confirmed the November 1994 disallowance, and declined to reopen the Veteran’s claim for service connection for a left ankle disability as secondary to the service-connected right ankle disability. The Veteran did not initiate an appeal with respect to either of these rating decisions. 
4. The evidence submitted since the January 2006 rating decision is neither cumulative nor redundant of the evidence already of record, and raises a reasonable possibility of substantiating the claim of service-connection for a left ankle disability.
5. The Veteran’s acquired psychiatric disorder, to include MDD has been manifested by occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood.
CONCLUSIONS OF LAW
1. The criteria for withdrawal by the Veteran of his Substantive Appeal on the issue of entitlement to a right ankle disability evaluation in excess of 10 percent prior to April 9, 2013 and in excess of 20 percent thereafter has been met. 38 U.S.C. § 7105 (b)(2), (d)(5) (2012); 38 C.F.R. §§ 20.202, 20.204 (2017).
2. The January 2006 rating decision is final. 38 U.S.C. § 5103, 5103(A), 7105(c) (West 2014); 38 C.F.R. § 3.104(a), 20.302(a), 20.1103 (2017). 
3. New and material evidence has been received to reopen the previously denied claim of entitlement to service connection for a left ankle disability. 38 U.S.C. §§ 5108, 7105(c) (West 2014); 38 C.F.R. §§ 3.156(a) (2017).
4. The criteria for reopening the claim for service connection for a left ankle disability has been met. 38 U.S.C. § 5108; 38 C.F.R. § 3.156 (a).
5. The criteria for a disability rating of 70 percent for an acquired psychiatric disorder, to include MDD have been met. 38 U.S.C. §§ 1155, 5107(b) (2014); 38 C.F.R. §§ 3.102, 3.321, 4.1, 4.7, 4.130, Diagnostic Code 9413 (2017).
REASONS AND BASES FOR FINDING AND CONCLUSION
The Veteran had active service from January 1977 to March 1980.
This matter comes before the Board of Veterans’ Appeals (Board) from rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO).
Regarding the Veteran’s left ankle disability, his claim was initially denied in a September 1994 rating decision. Subsequent rating decisions in 2002 and 2006 declined to reopen the left ankle claim. A September 2011 rating decision reopened the claim, but maintained the denial. 
In October 2012, the Veteran testified before a Decision Review Officer. A transcript of the hearing is of record.
In February 2016, the Veteran testified in a videoconference hearing before the undersigned. A transcript of this hearing is also of record.
In a June 2016 decision, the Board declined to reopen the Veteran’s previously denied claim of service connection for a left ankle disability, because new and material evidence to reopen the previously denied claim had not been received. The Veteran then appealed the case to the U.S. Court of Appeals for Veteran’s Claims (Court). The Court determined that the Board erred in declining to reopen the claim for the left ankle disability. Accordingly, the Court, in an October 2017 Memorandum Decision, reversed and remanded the Board’s June 2016 determination that new and material evidence was not submitted to reopen the claim for the left ankle disability.
The Board notes that claims for service connection for psychiatric disorders may encompass claims for service connection for all diagnosed psychiatric disorders. Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009). While the Veteran has asserted a claim of service connection for major depression specifically, the record indicates assessments of other acquired psychiatric disorders, to include PTSD. Accordingly, the Board has recharacterized the issue on appeal.
Withdrawn Claims
The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C. § 7105. An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. 38 C.F.R. § 20.204. Withdrawal may be made by the appellant or by his or her authorized representative. 38 C.F.R. § 20.204. In March 2017, the Veteran withdrew his appeal with respect to the matter of entitlement to an increased rating for his right ankle disability, currently rated at 10 percent prior to April 9, 2013 and 20 percent disabling thereafter. See March 2017 Appellant’s (CAVC) Brief. Accordingly, the Board does not have jurisdiction to review these aspects of the appeal, and this claim is dismissed.
New and Material Evidence
To reopen a claim that has been denied by a final decision, a claimant must present new and material evidence. 38 U.S.C. § 5108 (2012); 38 C.F.R. § 3.156 (a) (2017). The Board has a jurisdictional responsibility to determine whether a claim should or should not be reopened. See Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 2001). In other words, new and material evidence is jurisdictional and without it, the Board has no jurisdiction to adjudicate the merits de novo. McGinnis v. Brown, 4 Vet. App. 239, 244 (1993). Therefore, the Board must conduct a new and material evidence analysis regardless of whether or not the AOJ has previously found in favor of reopening a claim.
“New” evidence means evidence not previously submitted to agency decision makers. 38 U.S.C. § 5108. “Material” evidence means evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. 38 C.F.R. § 3.156 (a). New and material evidence can be neither cumulative no redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. Id.
By way of history, the Veteran’s claim for service connection for a left ankle disability was originally denied in a November 1994 rating decision. The RO found that although the Veteran claimed he fell from a ladder when his service-connected right ankle “gave way,” the evidence before it did not contain such circumstances surrounding the injury to support the Veteran’s contentions. By that decision, the RO considered the Veteran’s September 1994 statement as to the occurrence of events he claimed to have led to his injury, but then rejected that statement because, when his statement was compared with the private hospital and treatment records generated at the time of the Veteran presented for hospital care and surgery in August 1994, such medical records related that the present history of the illness was that of an acute on-the-job injury with no mention from the Veteran of his right ankle giving way. The RO determined that the evidence did not show that fractures of the distal left tibia and fibula with left ankle dislocation were directly related to the service-connected condition of fracture of the right medial malleolus with traumatic arthritis, right ankle, and denied the claim for service connection. The Veteran did not appeal this decision.
The Veteran’s claim for a left ankle disability was again denied in an April 2002 rating decision. The RO concluded that the evidence submitted in connection with the current claim did not constitute new and material evidence because it essentially duplicated evidence which was previously considered and was merely cumulative or redundant. The Veteran did not appeal this decision. 
In a January 2006 rating decision, the RO again denied the Veteran’s claim. The RO concluded that the VA treatment records submitted were new; however, they were cumulative in nature in that they referred to the Veteran’s right ankle as having been the cause of his left tibia and fibula injury as had been previously claimed. The RO further concluded that the available evidence did not show that left leg fracture sustained in August of 1994 while working was related to the service-connected condition of residuals, fracture, right medial malleolus with traumatic arthritis, nor was there any evidence of a left leg or ankle disability during military service.
The Veteran was notified of that decision and of his appellate rights by way of a letter sent to him on January 30, 2006. He did not appeal that decision and no additional evidence pertinent to the issue was associated with the claims folder within one year of the decision. See 38 C.F.R. § 3.156 (b) (2017); Bond v. Shinseki, 659 F.3d 1362 (Fed. Cir. 2011); see also Buie v. Shinseki, 24 Vet. App. 242, 251-52 (2010). Thus, the January 2006 rating decision became final based on the evidence then of record. 38 U.S.C. § 7105 (West 2014); 38 C.F.R. § 20.1103 (2017).
The relevant evidence of record at the time of the January 2006 rating decision included the Veteran’s service treatment records that revealed no complaint, treatment, or diagnosis of a left ankle disability; a March 1989 private treatment record that showed the Veteran reported pain in both ankles; an August 1994 the private treatment record that shows Veteran injured his left ankle at work and required surgery; a September 1994 statement in which the Veteran asserted he fell off of the ladder in 1994 because his service-connected right ankle “gave way”; VA treatment records dated May 1997 to December 2005 that reveal the Veteran's subjective reports of his left ankle being fractured secondary to right ankle weakness; April 2000 to November 2001 private treatment records that revealed additional injuries to the Veteran’s left ankle; and a September 2005 statement in which the Veteran asserted that the constant limping has made his left ankle worse. 
The Veteran submitted a claim to reopen in October 2010. The relevant evidence received since the January 2006 rating decision includes a December 2011 notice of disagreement in which the Veteran asserted that he fell due to his right ankle “giving way” and that he is competent to report his observation; an October 2012 VA primary care record that notes that in 1994 the Veteran was on a ladder, his ankle gave out and he fell two stories injuring his left ankle which required surgery; an October 2012 DRO hearing in which the Veteran testified that he was climbing a ladder when his right ankle gave out and he fell, injuring his left ankle; an April 2013 VA examination; Social Security Administration (SSA) records and the February 2016 Board hearing in which the Veteran asserted he fell and injured his left ankle because of his right ankle and the Veteran’s wife testified that on the day the Veteran injured his left ankle he told her his right ankle gave out and that the Veteran had always had trouble with his right ankle being weak causing him to fall.
The Board finds that the October 2012 medical note gave a medical explanation that the Veteran’s assertion that the August 1994 accident was precipitated by his service-connected right ankle giving way was reasonable and that there may have been nerve damage that interfered with the sensation of body position or movement. Additionally, the Board finds that the hearing testimony of the Veteran’s wife pertained to the Veteran’s propensity to fall as she observed her husband’s right ankle give way causing him to fall, even before the August 1994 accident. 
The Board finds that the evidence, is new, as it was not a part of the record prior to the previous RO denials. Additionally, the evidence is material in that it tends to establish that the Veteran may have been prone to falls before the August 1994 accident because of the right ankle giving way. Essentially, this evidence makes the likelihood that the accident was precipitated by the right ankle giving way greater than it would be without such evidence. 
Accordingly, the Board finds that new and material evidence has been presented to reopen the Veteran’s previously denied claims of entitlement to service connection for a left ankle disability, to include as secondary to a right ankle disability. New and material evidence having been received, the claim of entitlement to service connection for a left ankle disability is reopened. To that extent only, the claim is granted. The Board will remand this claim for further development on its merits below.
Increased Rating
The Veteran’s entire history is reviewed when making disability evaluations. 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). 
Disability evaluations are determined by comparing a Veteran’s symptoms with criteria set forth in VA’s Schedule for Rating Disabilities, which are based on average impairment in earning capacity. 38 U.S.C. § 1155; 38 C.F.R. Part 4. 
When a question arises as to which of two ratings applies under a particular diagnostic code, the higher of the two evaluations is assigned if the disability more closely approximates the criteria for the higher rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 
The Veteran’s acquired psychiatric condition, to include MDD, has been evaluated under Diagnostic Code 9413 at 50 percent. The General Rating Formula for psychiatric disabilities provides that occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships is rated 50 percent disabling. 
Occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals, which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships is rated 70 percent disabling. 
Total occupational and social impairment due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name is rated a maximum 100 percent disabling. 
The symptoms associated with the rating criteria are not intended to constitute exhaustive lists but rather serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). A Veteran may only qualify for a disability rating under 38 C.F.R. § 4.130 by demonstrating the particular symptoms associated with that percentage or others of similar severity, frequency, and duration. Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013).
1. Entitlement to a rating in excess of 50 percent for an acquired psychiatric condition, to include major depressive disorder.
The Veteran contends that his acquired psychiatric disorder, to include MDD is more disabling than reflected by the 50 percent rating currently assigned. 
Having reviewed the evidence of record, the Board finds that the Veteran’s acquired psychiatric condition, to include MDD is best reflected by a 70 percent disability rating.
During the personal hearing in November 2014, the Veteran testified that he lives in negative fear of falling with each step that he takes. As a result, the Veteran testified that it causes him to be short-tempered and reactive. He further testified that if someone touches him, in response, he will hit people.
The Veteran was afforded a VA examination in January 2016. The examiner diagnosed the Veteran with posttraumatic stress disorder (PTSD), major depressive disorder, severe, with psychotic features, insomnia disorder, and alcohol use disorder in sustained remission. The examiner opined that the Veteran had occupational and social impairment with deficiencies in most areas such as work, school, family relationships, judgment, thinking, and/or mood. The examiner noted symptoms to include depressed mood, anxiety, suspiciousness, panic attacks more than once a week, mild memory loss, flattened affect, impaired judgment, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty adapting to stressful circumstances, inability to establish and maintain effective relationships, suicidal ideation, and neglect of personal appearance and hygiene.
The Veteran was afforded a DBQ in October 2017. The examiner noted diagnoses of major depressive disorder and PTSD. Symptoms associated with his MDD include feelings of worthlessness, memory and concentration impairments, psychomotor retardation, depressed mood, loss of interest, and insomnia. Symptoms associated with his PTSD included nightmares, intrusive thoughts, poor sleep, panic, and hypervigilance. The examiner again opined that the Veteran’s occupational and social impairment was best summarized as having deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood.
Here, the evidence reflects that the Veteran’s acquired psychiatric disability has led to impairment in his family, social and work life. As the Veteran’s statements have been consistent and are also in line with the clinical findings of record, the Board finds the statements credible and probative. 
Overall, the record supports that throughout the appeal period, the Veteran has reported ongoing symptoms of depression, anger, irritability, paranoia, hypervigilance, mood instability, negative affect, intrusive thoughts, isolation, impaired social and family relationships, and memory and concentration issues. The Veteran further asserted that he has flashbacks, nightmares, temper alterations, and sleep problems. Additionally, the Veteran reported that he avoids crowds and social settings, has a limited social support network, and has difficulty relating to others. These symptoms are commensurate with a 70 percent rating. This supports that the Veteran’s symptoms are of such frequency, severity, and duration as to equate to those listed for a 70 percent evaluation. See Vazquez-Claudio, 713 F.3d at 112. Accordingly, the Board finds that a 70 percent rating is warranted for the Veteran’s acquired psychiatric condition. 
However, the Veteran’s occupational and social impairment cannot be described as total and is therefore not commensurate with a maximum 100 percent rating. During the appeal period, the Veteran consistently presented as oriented and alert. There are no indications of impaired speech or obsessive ritualistic habits. Nor does the record reflect that the Veteran had grossly inappropriate behavior. While the Board acknowledges the Veteran’s short-term memory loss, the evidence does not suggest that the Veteran had memory loss for the names of close relatives, his own occupation, or his own name. 
Overall, the evidence also fails to show that the Veteran’s symptoms equate in severity, frequency, and duration to total occupational and social impairment. See Vazquez-Claudio v. Shinseki. The Veteran reported that he has persistent delusions or hallucinations, but the examiner determined that the hallucinations are not related to the diagnoses. As the examiner considered the history and nature of the Veteran’s hallucinations in regard to his overall mental health symptoms, the Board finds the assessment probative. The record does not reflect that the Veteran is a persistent danger to self or others. While the Veteran has difficulty getting along with others and is irritable, his impulse control was generally indicated to be good. While he noted being physical with someone, this appears to have been an isolated occurrence. Thus, the record does not support that the Veteran’s symptoms more nearly approximate total social and occupational impairment. 
Consideration has also been given to assigning staged ratings. However, the Board finds that at no time during the period in question has the disability warranted a higher schedular rating than that assigned. See Fenderson, 12 Vet. App. at 119. 
In light of the evidence discussed, the Board finds that the preponderance of the evidence supports a disability rating of 70 percent. Accordingly, the Board grants a disability rating of 70 percent, but no higher, for the entirety of the appeal period.
REASONS FOR REMAND
1. Entitlement to service connection for a left ankle disability, to include as secondary to a right ankle disability is remanded
As noted above, the Court reversed and remanded the Board’s June 2016 decision in an October 2017 Memorandum Decision. 
After a review of the record, the Board remands this matter for additional medical inquiry. Specifically, the Board remands this matter to determine the etiology of the Veteran’s left ankle disability. See McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006); Colvin v. Derwinski, 1 Vet. App. 171 (1991) (stating that VA adjudicators are not permitted to substitute their own judgment on a medical matter).
The Veteran was diagnosed with a left ankle disability in August 1994, and in September 1994, he reported that the injuries that he sustained in August 1994 were because his right ankle gave way and he fell and injured his left ankle. As to additional lay statements, in August 2012, the Veteran testified that his service-connected right ankle causes him to get hurt every year. In October 2012, the Veteran testified that his right ankle gave out frequently and was constantly swollen and painful. The Veteran’s wife testified that the Veteran had issues with his right ankle giving out for the 21 years that she had been married to him. In February 2016, the Veteran testified that his left ankle was injured in 1994, because his right ankle gave out when he was on a ladder. The Veteran’s wife testified that the Veteran has always had problems with weakness and instability of the right ankle and that she had witnessed him fall because his right ankle would just give out. She further testified that on the day of the accident, in September 1994, the Veteran told him that his right ankle gave out.
The medical evidence of record includes an October 2012 VA treatment record which notes that the Veteran injured his back in 1988 because his right ankle gave out. The physician also noted that the Veteran’s right ankle may have led to the fall which started his back pain and knee pathology and that it was a reasonable conclusion based on his current history and history documented in his VA records. A May 2013 VA medical record reveals that the Veteran had a fall risk assessment, indicative of a moderate to high risk. In October 2014, an emergency department record noted that the Veteran had a medical condition of ankle pain and falls from slipping, tripping, or stumbling. VA treatment records, dated in January 2015 and February 2015, note that history of falls. In a September 2017 DBQ, the examiner noted that the Veteran’s bilateral ankle pain has left him with an unsteady gait, which has caused falls with subsequent injuries or exacerbations of the back and knees. The examiner also noted, in the history section of the report, that the Veteran’s left ankle fracture was the result of falling off of a ladder.
The Board finds that an addendum opinion is necessary to determine the etiology of the Veteran’s condition. While the September 2017 examiner noted that the Veteran has an unsteady gait and endorsed the Veteran’s lay statements that he fell off of a ladder, the examiner did not specifically note the interplay between the Veteran’s right ankle disability and his subsequent left ankle disability.
2. Entitlement to service connection for a right shoulder disability, to include as secondary to a right ankle disability is remanded.
The Veteran contends that service connection is warranted for a right shoulder disability, to include as secondary to a right ankle disability.
In November 2014, the Veteran testified that his right ankle gave out while holding up countertops and fell onto his head and right shoulder.
A June 2000 treatment record reveals that the Veteran reported that he was involved in a motor vehicle accident in January 2000 in which he injured his right upper extremity.
In a December 2012 VA examination, the examiner opined that the Veteran’s right shoulder condition was less likely as not related to the right ankle condition. The rationale provided was that there was no mention of right shoulder pain in his clinical notes. The examiner also stated that for the right ankle fracture to impact upon shoulder pain, there clearly must be a cause and effect shown, and that there was no notation in his records has there been made a relationship between the ankle fracture and other complaints that followed.
A May 2012 VA treatment record includes x-rays which revealed degenerative changes at the AC joint and generalized osteopenia.
In January 2015, a VA examiner stated that, as indicated in previous exams and opinion, the Veteran’s right ankle was not unstable and that the Veteran had few symptoms. The examiner also noted that there appeared to be no private clinical evidence of ankle instability or evidence of the propensity to fall. The examiner further noted that gait differences do not contribute to other joint issues, and that the Veteran’s ankle did not cause an altered gait. 
In a September 2015 VA examination, the Veteran was diagnosed with right shoulder tendonitis. The Veteran reported that he was working and pulling out some countertops from the compartment and that when he raised them up, his right ankle popped and caused the countertops to fall onto him injuring his right shoulder. The examiner opined that the right shoulder condition was less likely than not incurred in or caused by your altered gait; less likely than not proximately due to the result of your fall due to your right ankle; and less likely than not aggravated beyond its natural progression by your fall due to your right ankle. The rationale provided was that there was an absence of supporting evidence of a persistent right shoulder condition in the Veteran’s medical records and that the condition was first noted in the records during the Veteran’s December 2012 examination. 
The Board finds that the September 2015 examiner’s opinion lacked sufficient rationale. The Board further notes that it is impermissible for a VA examiner to rely on the absence of medical records as the basis of a negative opinion. Additionally, the examiner did not consider the Veteran’s lay statements and medical evidence of record indicating that the Veteran has an unsteady or abnormal gait. As such, the Board must remand the claim for an addendum opinion.
3. Entitlement to service connection for a bilateral wrist disability, to include as secondary to a right ankle disability is remanded.
The Veteran contends that service connection is warranted for a bilateral wrist disorder, to include as secondary to a right ankle disorder.
In November 2014, the Veteran testified that his bilateral wrist condition was caused by catching himself from falling on a frequent basis.
In December 2010, the Veteran noted complaints of falling down stairs and complaints, in part, of left wrist pain. 
The Veteran was afforded a VA examination in December 2012. The examiner opined that the Veteran’s bilateral wrist condition was less likely as not related to the right ankle condition. The examiner stated it was noted on medical records that he complained in March 1989 of wrist pain following an occupationally-related fall. The examiner noted that there were no other notations in his treatment records of complaints. The examiner also noted that for the right ankle fracture to impact upon wrist pain, there clearly must be a cause and effect shown, but that there were no notations in his record of a relationship between the right ankle fracture and his bilateral wrist disorder.
A January 2000 VA treatment record noted complaints of pain in both wrists and hands. 
In September 2005, the Veteran noted complaints of multiple joint pain and stiffness. Hand x-rays dated September 16, 2005 noted degenerative changes minimal at both wrist and IP joints. 
In January 2015, the Veteran was afforded a VA examination. The examiner noted that the record reflected that the Veteran’s right ankle was not unstable and that he had very few symptoms. The examiner also noted that there appeared to be no clinical evidence of ankle instability or falls. Gait differences do not contribute to other joint issues, and the Veteran’s ankle did not cause an altered gait.
The Veteran was afforded another VA examination in September 2015. The Veteran was diagnosed with a bilateral wrist sprain. The Veteran reported that that, in 2003, his right ankle gave out and he fell on his outstretched hands causing an injury to his bilateral wrists. The Veteran also reported that he had been told that he had Dupuytren’s Contracture and bilateral carpal tunnel syndrome. The examiner made comments that the numbness and tingling of bilateral wrists were likely more due to carpal tunnel syndrome based on the reported subjective complaints. Following the evaluation and review of the evidence of record, the examiner stated the bilateral wrist condition is less likely than not incurred in or caused by your altered gait; less likely than not proximately due to the result of your fall due to your right ankle; and less likely than not aggravated beyond its natural progression by your fall due to your right ankle. The rationale provided was that there was an absence of supporting evidence of a persistent bilateral wrist condition in the medical records prior to the occupational fall in 1988, and that, as a result, the examiner could not link the Veteran’s current wrist condition to any in service injuries, events or illnesses. 
The Board finds that the September 2015 examiner’s opinion lacked sufficient rationale. The Board further notes that it is impermissible for a VA examiner to rely on the absence of medical records as the basis of a negative opinion. Additionally, the examiner did not consider the Veteran’s lay statements and medical evidence of record indicating that the Veteran has an unsteady or abnormal gait. As such, the Board must remand the claim for an addendum opinion.
4. Entitlement to service connection for a low back disability, to include as secondary to a right ankle disability is remanded. 
The Veteran contends that service connection is warranted for a right ankle condition. 
In an April 1992 VA examination, the Veteran reported that his right ankle gave out and he dropped a large weight, injuring his low back. The examiner stated the lumbar spine, status post L4-5 laminectomy and probable discectomy was only minimally to moderately symptomatic at that point and should remain stable or even get better.
In November 2014, the Veteran testified that he injured his low back when his right ankle gave out. 
A March 1989 treatment note reveals that, in April 1988, the Veteran fell and injured his back after loading baggage tubs into an elevator. The Veteran reported the injury and complained, in part, of low back pain.
A March 1989 CT scan reveals a Grade IIIB disc bulge midline extending to both sides at L4, L5 with some possible slight herniation through the annulus as well in the midline at this level. 
In July 1989, the Veteran underwent a laminectomy.
In December 2010, the Veteran noted complaints of a fall down stairs and complaints of associated back pain. 
In December 2012, the examiner opined that the Veteran’s low back condition was less likely as not related to the right ankle condition. The examiner stated it was noted on medical records that he complained in March 1989 of back pain following an occupationally-related fall. The examiner also noted that there was no notation in his other treatment records of back complaints. The examiner further stated that for the right ankle fracture to impact upon back pain, there clearly must be a cause and effect shown. Nowhere in your record has ever made a relationship between the ankle fracture and all the other complaints that follow and that, as a result, no relationship exists.
An October 2012 treatment record reveals prior history to include that lumbar surgery in 1988 after an acute injury when his right ankle gave out which caused a herniated disc at L4-5; a 1998 incident involving his right ankle giving way while lifting a bath tub, resulting in back surgery for a herniated disk. A physician noted right ankle pain from previous surgeries with poor proprioception which may have led to the fall which started your back pain and may have contributed to your knee pathology. 
As such, the Veteran was afforded a VA examination in January 2015. The examiner noted that previous exams revealed that the Veteran’s ankle was unstable and that he had few symptoms. The examiner also stated that there was no private clinical evidence of ankle instability or of his ankle causing him to fall and that gait differences do not contribute to back issues. 
In a September 2015 VA examination, the Veteran was diagnosed with degenerative arthritis of the spine with lumbar laminectomy. The Veteran reported that in 1988, his right ankle gave out and, as a result, he injured his low back. The examiner opined that his lumbar spine condition was less likely than not incurred in or caused by his altered gait; less likely than not proximately due to the result of his fall due to your right ankle; and less likely than not aggravated beyond its natural progression by your fall due to your right ankle. The rationale provided was that it was noted in the medical record review that the Veteran initially complained of lower back pain following an occupationally related fall in April 1988. The examiner also noted that due to the absence of supporting evidence of a persistent back condition in the medical records prior to the occupational fall in 1988, he was unable to link the Veteran’s current low back condition to any in-service injuries, events, or illnesses. The examiner also stated that there were no relationships noted in the medical records between the Veteran’s low back condition and his service connected right ankle fracture.
In a September 2017 ankle DBQ, the examiner noted that the Veteran’s bilateral ankle pain has left him with an unstable gait which has caused falls with subsequent injuries or exacerbations of his back pain.
The Board finds that the September 2015 examiner’s opinion lacked sufficient rationale. The Board further notes that it is impermissible for a VA examiner to rely on the absence of medical records as the basis of a negative opinion. Additionally, the examiner did not consider the Veteran’s lay statements and medical evidence of record indicating that the Veteran has an unsteady or abnormal gait. As such, the Board must remand the claim for an addendum opinion.
5. Entitlement to service connection for a bilateral hip condition, to include as secondary to a right ankle disability is remanded.
The Veteran contends that service connection is warranted for a bilateral hip condition, to include as secondary to a right ankle disability.
In November 2014, the Veteran testified that his pain starts at the ankle and elevates through his hips. The Veteran further testified that his bilateral hip condition was due to his right ankle and its associated instability. 
The Veteran was afforded a VA examination in December 2012. The examiner opined that the Veteran’s bilateral hip condition was less likely as not related to the right ankle condition. The rationale provided was that there was no mention of complaints in the Veteran’s treatment records and that there had never been a notation in the Veteran’s records that there was a relationship between his right ankle fracture and his bilateral hip condition. 
In a November 2010 VA treatment record, x-rays noted minimal/moderate degenerative arthritis changes in upper part of both hip joints. 
The Veteran was afforded another VA examination in January 2015. The VA examiner reviewed the evidence of record and stated that another examination report noted that the Veteran’s right ankle was not unstable. The examiner also stated that there appeared to be an absence of private clinical evidence of ankle instability or notations that the Veteran’s ankle caused him to fall. The examiner noted that gait differences do not contribute to other joint issues and concluded that the Veteran’s ankle did not cause an altered gait. 
The Veteran was afforded another VA examination in September 2015. The examiner diagnosed the Veteran with degenerative arthritis of the bilateral hips. The Veteran reported that his right ankle resulted in an altered gait and that he had been involved in a number of falls. The Veteran also stated that he altered his gait due to right hip pain which then resulted in left hip pain. The examiner opined that his bilateral hip condition was less likely than not incurred in or caused by his altered gait; less likely than not proximately due to the result of his fall due to his right ankle; and less likely than not aggravated beyond its natural progression by his fall due to his right ankle. The rationale provided was that there was an absence of supporting evidence of a persistent bilateral hip condition in the medical records prior to the occupational fall in 1988 and that, as a result, the examiner could not link the Veteran’s bilateral hip condition to any in-service injuries, events, or illnesses. The examiner also noted that there were no relationships noted in the medical records between the Veteran’s bilateral hip condition and his service-connected right ankle condition which would support the claim.
The Board finds that the September 2015 examiner’s opinion lacked sufficient rationale. As to direct service connection, it is impermissible for a VA examiner to rely on the absence of medical records as the basis of a negative opinion. As to secondary service connection, there was no supporting rationale provided in support of the negative opinion. Additionally, the examiner did not consider the Veteran’s lay statements and medical evidence of record indicating that the Veteran has an unsteady or abnormal gait. As such, the Board must remand the claim for an addendum opinion.
6. Entitlement to service connection for a bilateral knee condition, to include as secondary to a right ankle disability is remanded.
The Veteran contends that service connection is warranted for a bilateral knee condition. More specifically, the Veteran contends that he injured his knees while in the military after engaging in war games and after falling on stairs or, in the alternative, as a result of his right ankle disability.
In a December 2012 VA examination, the opined that the Veteran’s knees were less likely as not due to military service. The rationale provided was that the Veteran was seen while in service, in 1977 and 1978, but that he did not follow up in his complaints until after service discharge. The examiner also noted that the Veteran’s x-rays of knees were negative, but that May 2007 x-rays noted early osteoarthritis. 
In a February 2014 DBQ, the examiner noted diagnoses of chronic ankle pain and chronic knee pain. The examiner noted that the Veteran’s bilateral ankle instability was a major contributor to his knee pain.
The Veteran was afforded another VA examination in January 2015. The examiner noted that the Veteran’s right ankle was not unstable and that there was no clinical evidence of ankle instability. The examiner further noted that gait differences do not cause joint issues, and that the Veteran’s ankle condition did not cause an altered gait. 
In a September 2015 VA examination, the Veteran was diagnosed with degenerative arthritis of the bilateral knees. The Veteran reported that his right ankle resulted in an altered gait and, as a result, the Veteran was involved in many falls. The Veteran further stated that he had recurrent injuries to his bilateral knees. The examiner stated that the Veteran’s bilateral knee condition was less likely than not incurred in or caused by his altered gait; less likely than not proximately due to the result of his fall due to his right ankle; and less likely than not aggravated beyond its natural progression by his fall due to his right ankle. The rationale provided was that there was an absence of supporting evidence of a persistent knee condition in the military medical records, and that the examiner was unable to link the Veteran’s current bilateral knee degenerative joint disease to any in-service events or illnesses.
In a September 2017 ankle DBQ, the examiner noted that the Veteran’s bilateral ankle pain has left him with an unstable gait which has caused falls with subsequent injuries or exacerbations of his knee pain.
The Board finds that the September 2015 examiner’s opinion lacked sufficient rationale. As to direct service connection, it is impermissible for a VA examiner to rely on the absence of medical records as the basis of a negative opinion. As to secondary service connection, there was no supporting rationale provided in support of the negative opinion. Additionally, the examiner did not consider the Veteran’s lay statements and medical evidence of record indicating that the Veteran has an unsteady or abnormal gait. As such, the Board must remand the claim for an addendum opinion. 
7. Entitlement to a compensable rating for a right ankle scar is remanded.
The Veteran contends that his right ankle scar is more disabling than reflected by the 0 percent rating currently assigned.
The Veteran was afforded a VA examination in December 2012. The examiner noted that the Veteran had a linear scar that measured 6 centimeters. The scar was not superficial or deep. The scar was not painful or unstable.
In an April 2013 VA examination report, the Veteran’s scar was noted to not be painful or unstable. The total area was not greater than 39 square centimeters.
In a November 2014 DRO hearing, the Veteran testified that his scar sometimes opens and bleeds. The Veteran further testified that this scar is itchy and marked by numbness and tenderness and that he experiences a loss of feeling.
Because the Veteran has claimed that his scar may have worsened, the Board must remand the claim for a new examination to assess the severity, particularly to discover whether the Veteran’s scar is unstable in nature.
8. Entitlement to TDIU is remanded.
The Veteran contends that his right ankle, acquired psychiatric, and knee disabilities prevent him from securing gainful employment.
In addition, the claim for a TDIU is remanded because it is inextricably intertwined with the issues being remanded. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (holding that all issues “inextricably intertwined” with issues certified for appeal are to be identified and developed prior to appellate review).
The matters are REMANDED for the following action:
1. Obtain an addendum opinion from an appropriate clinician regarding whether the Veteran’s left ankle disorder is proximately due to his service-connected right ankle disability or was aggravated beyond its natural progression by such. In doing so, the examiner must specifically consider the Veteran and his wife’s Board testimony, the October 2012 treatment record, and the October 2017 ankle examination report.
2. Obtain an addendum opinion from an appropriate clinician regarding whether the Veteran’s (1) right shoulder, (2) bilateral wrist, (3) low back, (4) bilateral hip, and (5) bilateral knee disorders are at least as likely as not proximately due to his service-connected right ankle disability. In doing so, the examiner must specifically consider the October 2017 medical opinion which states that the Veteran has an unsteady gait, which has caused falls and subsequent injuries as well as the lay statements of the Veteran and his wife.
(Continued on the next page)
 
3. Schedule the Veteran for an examination by an appropriate clinician to determine the current severity of the Veteran’s right ankle scar. In doing so, the examiner must consider the Veteran’s November 2014 testimony that his scar opens and bleeds.
4. After the above development, and any additionally indicated development, has been completed, readjudicate the issue on appeal, including the inextricably intertwined issue of a TDIU. If the benefit sought is not granted to the Veteran’s satisfaction, send the Veteran and his representative a Supplemental Statement of the Case and provide an opportunity to respond. If necessary, return the case to the Board for further appellate review.
 
DEBORAH W. SINGLETON
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD Tiffany N. Hanson, Associate Counsel